PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 10-2281
———

HETTY A. VIERA,
as Executrix of the Estate of Frederick A. Viera;
HETTY A. VIERA, Individually,

Appellants

v.

LIFE INSURANCE COMPANY
OF NORTH AMERICA
———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cv-03574)
District Judge:  Honorable Eduardo C. Robreno
———

Argued April 13, 2011
Before:  FISHER, JORDAN and COWEN, *Circuit Judges*.

(Filed: June 10, 2011)

James W. Sutton, III (Argued)
Vlasac & Shmaruk
1014 Millcreek Drive
Feasterville, PA 19053
    *Counsel for Appellant*

Mark C. Cawley
James A. Keller (Argued)
Allison B. Newhart
Saul Ewing
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA 19102
    *Counsel for Appellee*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

This appeal arises out of the 2008 death of Frederick Viera ("Viera") in a head-on motorcycle accident. At the time of his death, Viera was covered under an employer-provided accidental death and dismemberment policy ("Policy"), issued by Life Insurance Company of America ("LINA"), and subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1101 *et seq*. Viera's wife and the executrix of his estate, Hetty Viera ("Plaintiff"), submitted a claim under the Policy following his death. LINA denied Plaintiff's claim, both initially and on appeal.

2

Subsequently, Plaintiff filed suit, but the United States District Court for the Eastern District of Pennsylvania found for LINA on cross-motions for summary judgment. It concluded that the Policy gave LINA discretionary authority to determine eligibility. It therefore reviewed LINA's decision under a deferential abuse-of-discretion standard and held that LINA was entitled to summary judgment. We conclude that deferential review was not appropriate, given the language of the Policy, and thus remand for further proceedings.

I.

A.    Factual History

On October 14, 2008, Viera was seriously injured in a motorcycle accident in Grand Junction, Colorado. He was treated at St. Mary's Hospital and Medical Center ("St. Mary's") for approximately three hours and subsequently died.

On the date of his death, Viera maintained the Policy, an employer-provided accidental death and dismemberment policy regulated under ERISA.[1] The Policy was issued and administered by LINA.

---

[1] Viera also had an employer-provided life insurance policy at the time of his death. Plaintiff received $350,000 from LINA on account of this claim.

3

Viera had a pre-existing chronic condition known as atrial fibrillation, which was diagnosed prior to LINA's issuing the Policy. As part of the medical treatment for this condition, Viera received medication called Coumadin (also known as Warfarin). Coumadin is a prescription oral anti-coagulant drug prescribed for the prevention and treatment of blood clots.

Following Viera's motorcycle accident, doctors at St. Mary's made several findings regarding his treatment and death. For example, the Final Assessment made in the Emergency Report confirmed that Viera was "on Coumadin with therapeutic INR[2] significantly complicating trauma management." (App. at 160.) The Discharge Summary prepared by Dr. Michael Bradshaw of St. Mary's described Viera's death as caused by "multiple injuries in a head-on motorcycle versus car accident with severe pelvic fractures, lower extremity fractures, and a fully coumadinized patient due to atrial fibrillation." (*Id.* at 138.)

The Certificate of Death confirmed that the immediate cause of Viera's death was "multiple injuries," and it ambiguously noted that "arteriosclerotic cardiovascular disease" was a "condition [] contributing to death but not related to [immediate cause]." (*Id.* at 227.) The autopsy report, prepared by Robert A. Kurtzman, listed the immediate cause of death as "multiple injuries" and listed "other

---

[2] The International Normalized Ratio ("INR") measures the Coumadin levels in a person's blood.

4

significant conditions" including "atrial fibrillation." (*Id*. at 237.)

Plaintiff submitted a claim for benefits under the Policy to LINA on November 3, 2008. LINA denied her claim. Key to this appeal is the language of several Policy provisions:

"Covered Loss":

A loss that is all of the following:

1. the result, *directly and independently* of all other causes, of a Covered Accident;

2. one of the Covered Losses specified in the Schedule of Covered Losses;

3. suffered by the Covered Person within the applicable time period specified in the Schedule of Benefits.

(*Id*. at 78) (emphasis added).

"Covered Accident":

A sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss and meets all of the following conditions:

1. occurs while the Covered Person is insured under this Policy;

5

2. is not contributed to by disease, Sickness, mental or bodily infirmity;

3. is not otherwise excluded under the terms of this Policy.

(*Id.*)

"Proof of Loss":

Written or authorized electronic proof of loss *satisfactory to Us* must be given to Us at Our office, within 90 days of the loss for which claim is made.

(*Id*. at 85) (emphasis added).

LINA denied Plaintiff's claim by finding that the specific circumstances of Viera's death did not constitute a covered event under the terms of the Policy. Specifically, LINA maintained that Viera's accident was excluded by the "Medical Condition Exclusion" of the Policy, which states that:

[B]enefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from . . . [s]ickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food.

6

(*Id*. at 83.) LINA concluded that Viera's Coumadin treatment complicated his medical treatment and constituted a contributing factor to his death. LINA relied on a report by Dr. Mark H. Eaton, a medical doctor it had retained to review the accident reports and hospital records. Dr. Eaton reviewed the hospital records, the autopsy report, and the official Death Certificate in reaching his conclusion. Dr. Eaton reported that:

> The cause of Mr. Viera's death was attributed to the traumatic pelvic fracture which resulted in clinically significant pelvic and retroperitoneal hemorrhage complicated by the fact that the claimant was systematically anti-coagulated. . . . In my opinion [Viera's] Coumadin therapy significantly contributed to his death as it is more than likely he would have survived the traumatic pelvic fracture if he had not been fully anti-coagulated at the time of his injury.

(*Id*. at 124.) Plaintiff administratively appealed the denial of benefits in a written letter to LINA. She chose not to supplement the record with information supporting her claim at that time. LINA affirmed its decision to deny benefits.

## B.    Procedural History

Plaintiff filed an ERISA action against LINA in the Court of Common Pleas of Philadelphia County, Pennsylvania.  LINA removed the action to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1331 and 1441.[3]

In preparation for the litigation, Plaintiff hired an independent expert, Dr. Aaron J. Gindea, to conduct a review of the medical records.  Dr. Gindea reported that:

> The hospital staff did everything possible to reverse the [Coumadin] effect and limit the bleeding.  Although the presence of [Coumadin] did make the bleeding worse, it is unreasonable to propose that, if not for the [Coumadin], the patient likely would have survived.  Therefore, the patient's death WAS NOT directly or indirectly, in whole or in part, caused by or resulted from the [Coumadin] therapy.  Rather, it was the result of severe trauma from a motor vehicle accident which would likely have been fatal in the presence of or the absence of [Coumadin].

(*Id*. at 320-21.)

---

[3] We have jurisdiction pursuant to 28 U.S.C. § 1291.

The parties filed cross-motions for summary judgment. The District Court granted LINA's motion for summary judgment, denied Plaintiff's motion for summary judgment, and directed entry of judgment in favor of LINA. It found that LINA's denial of benefits was not an abuse of discretion. Plaintiff timely appealed and argues that the District Court should have reviewed LINA's decision *de novo*. In the alternative, she asserts that even under a deferential standard of review, a genuine issue of material fact exists such that summary judgment was inappropriate. Finally, she argues that the District Court misinterpreted the Medical Exclusion Provision of the Policy, which she maintains cannot be read to include atrial fibrillation or Coumadin treatment.

## II.

A district court's determination of the proper standard to apply in its review of an ERISA plan administrator's decision is a legal conclusion which we review *de novo*. *Grupo Protexa, S.A. v. All Am. Marine Slip*, 20 F.3d 1224, 1231 (3d Cir. 1994).

We review a district court's grant of summary judgment *de novo*, applying the same standard the district court applied. *Alcoa, Inc. v. United States*, 509 F.3d 173, 175 (3d Cir. 2007). We also review the legal interpretation of contractual language *de novo*. *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1254 (3d Cir. 1993).

9

III.

**A.** **Standard of Review of LINA's Benefits Denial**

The Supreme Court has held that "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations, we review its decisions under an abuse-of-discretion (or arbitrary and capricious) standard.[4] *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009). "Whether a plan administrator's exercise of power is mandatory or discretionary depends upon the terms of the plan." *Luby v. Teamsters Health, Welfare, & Pension Trust Funds*, 944 F.2d 1176, 1180 (3d Cir. 1991). There are no "magic words" determining the scope of judicial review of decisions to deny benefits, and discretionary powers may be granted expressly or implicitly. *Id.* However, when a plan is ambiguous, it is construed in favor of the insured. *Heasley*, 2 F.3d at 1258. "The plan administrator bears the burden of proving that the arbitrary and capricious

---

[4] In the ERISA context, an "abuse-of-discretion" standard of review is used interchangeably with an "arbitrary and capricious" standard of review. *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 n.6 (3d Cir. 2010).

standard of review applies." *Kinstler v. First Reliance Std. Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999).

Under the abuse-of-discretion standard, we may overturn an administrator's decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (quoting *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)). In determining whether an administrator abused its discretion, we must consider any structural conflict of interest as one of several factors. *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 526 (3d Cir. 2009).

In contrast, if we exercise *de novo* review, the role of the court "is to determine whether the administrator . . . made a correct decision." *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 808-09 (6th Cir. 2002) (alteration in original) (quoting *Perry v. Simplicity Eng'g*, 900 F.2d 963, 965 (6th Cir. 1990)). "The administrator's decision is accorded no deference or presumption of correctness." *Id.* at 809. The court must review the record and "determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan." *Id*.

The relevant language at issue in the Policy is the "Proof of Loss" provision, which provides: "Written or authorized electronic proof of loss *satisfactory to Us* must be given to Us at Our office, within 90 days of the loss for which claim is made." (App. at 85) (emphasis added). LINA argues that this language confers discretion upon them because they

11

have expressly reserved the right to decide whether the proof of loss is satisfactory *to them*. Plaintiff argues that the language does not expressly and unambiguously confer discretion. Specifically, Plaintiff argues that the language can be interpreted in several different ways.[5] Plaintiff argues that the alleged ambiguity should be resolved in her favor and *de novo* review should apply. The District Court rejected Plaintiff's argument and held that the "relevant policy language presents a clear grant of discretionary authority to LINA in deciding whether sufficient proof to support a claim has been submitted to shift the Court's review from *de novo* to the deferential abuse of discretion standard." *Viera v. Life Ins. Co. of N. Am.*, 2010 WL 1407312, at *5 (E.D. Pa. Apr. 6, 2010). We disagree.

To begin with, we distinguish the language at issue here – in particular, the words "proof of loss satisfactory to Us" – from language in other plans that requires submission of "satisfactory proof," without reference to who must be satisfied. Most courts of appeals to consider the issue have concluded that the mere requirement to submit "satisfactory

---

[5] LINA makes much of Plaintiff's admission before the District Court that "[t]his language clearly states that LINA shall be the entity determining whether the loss is satisfactory to it." (App. at 14.) LINA argues that this constitutes a waiver of Plaintiff's argument that the language is ambiguous and, as such, must be construed against the drafter. This single statement by Plaintiff only establishes, or "admits," that LINA is the decision-maker. It does not stand for a complete concession of the *de novo* standard.

proof" does not confer discretion upon an administrator, and thus, does not insulate the administrator from *de novo* review. *See*, *e.g.*, *Perugini-Christen v. Homestead Mortg. Co.*, 287 F.3d 624, 626-27 (7th Cir. 2002) (a policy requiring "satisfactory proof of Total Disability to [the insurer]" results in *de novo* review); *Kearney v. Std. Ins. Co.*, 175 F.3d 1084, 1089-90 (9th Cir. 1999) (en banc) (same where policy requires "receipt of satisfactory written proof"); *Kinstler*, 181 F.3d at 251-52 (same where policy requires insured to "submit[] satisfactory proof of Total Disability to [the insurer]").

On the other hand, courts of appeals interpreting policy language requiring submission of "proof of loss satisfactory to Us" have reached divergent conclusions, revealing the ambiguity inherent in the language. The United States Court of Appeals for the Second Circuit was the first appellate court to suggest that "satisfactory to us" language may not be sufficient to trigger abuse-of-discretion review. In *Kinstler*, 181 F.3d at 252, the court explained:

> [T]he word "satisfactory," whether in the phrase "satisfactory proof" or the phrase "proof satisfactory to [the decision-maker]" is an inadequate way to convey the idea that a plan administrator has discretion. Every plan that is administered requires submission of proof that will "satisfy" the administrator. No plan provides benefits when the administrator thinks that benefits should not be paid! Thus, saying that proof must be satisfactory "to the administrator" merely states the obvious point

13

that the administrator is the decision-maker, at
least in the first instance. [Therefore] we
reiterate that . . . insulation from *de novo* review
requires either language stating that the award
of benefits is within the discretion of the plan
administrator or language that is plainly the
functional equivalent of such wording.

*Id.* at 252.

Shortly thereafter, the United States Court of Appeals
for the Seventh Circuit squarely held that "satisfactory to us"
language is insufficient to confer discretion. In *Diaz v.
Prudential Insurance Co. of America*, 424 F.3d 635, 639-40
(7th Cir. 2005), the court broke from other courts of appeals,
and its own prior precedent,[6] by holding that the "satisfactory
to us" language was no longer sufficient to compel abuse-of-

---

[6] The Seventh Circuit had twice before held that this
language conferred discretion adequate to yield abuse-of-
discretion review. *See Donato v. Metro. Life Ins. Co.*, 19
F.3d 375, 379-80 (7th Cir. 1994) ("satisfactory to us"
sufficiently conferred discretion); *Bali v. Blue Cross & Blue
Shield Ass'n*, 873 F.2d 1043, 1047 (7th Cir. 1989)
("satisfactory to Committee" sufficiently conferred
discretion). Therefore, prior to being published, *Diaz v.
Prudential Insurance Co. of America*, 424 F.3d 635 (7th Cir.
2005), was circulated to all active judges under Seventh
Circuit Rule 40(e) because it changed the way the court
ascertained the proper standard of review. No judge voted to
hear the case en banc.

14

discretion review. *Diaz* held that the "critical question is whether the plan gives the employee adequate notice that the plan administrator is to make a judgment within the confines of pre-set standards, or if it has the latitude to shape the application, interpretation, and content of the rules in each case." *Id.* *Diaz* relied on language from *Herzberger v. Standard Insurance Co.*, 205 F.3d 327 (7th Cir. 2000), for the proposition that *Herzberger* changed the course of Seventh Circuit jurisprudence on this issue. In so holding, it reaffirmed the safe harbor language it pioneered in *Herzberger*:

> [i]f a plan wishes to insulate its decision to deny benefits from plenary review, the surest way to do so (at least in this Circuit) is by including language that either mimics or is functionally equivalent to the "safe harbor" language we have suggested: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them."

*Diaz*, 424 F.3d at 637 (quoting *Herzberger*, 205 F.3d at 331). However, the *Diaz* court went further than *Herzberger* by holding that "[n]o single phrase such as 'satisfactory to us' is likely to convey enough information to permit the employee to distinguish between plans that do and plans that do not confer discretion on the administrator." *Id.* at 639.

The United States Court of Appeals for the Ninth Circuit followed the footsteps of the Seventh Circuit and held that "satisfactory to us" language does not "unambiguously

15

provide discretion to the plan administrator." *Feibusch v. Integrated Device Tech., Inc.*, 463 F.3d 880, 883 (9th Cir. 2006) (applying *de novo* review). The Ninth Circuit adopted safe harbor language[7] and explained that the "policy does not unambiguously indicate that the plan administrator 'has authority, power, or discretion to determine eligibility or to construe the terms of the Plan, [and therefore] the standard of review will be *de novo*.'" *Id*. at 884 (quoting *Sandy v. Reliance Std. Life Ins. Co.*, 222 F.3d 1202, 1207 (9th Cir. 2000)). It reasoned that the term "satisfactory to us," "only arguably confer[red] discretion," and that therefore the ambiguity must be resolved in favor of the insured. *Id*. It also noted that although it endorsed the safe harbor language, it was not requiring "magic words." *Id*.

There is, however, a split among our sister courts of appeals regarding the impact of the "satisfactory to us" language. In contrast to the courts of appeals for the Second, Seventh, and Ninth Circuits, the First, Eighth, and Tenth Circuits have held that the "satisfactory to us" language confers discretion sufficient to insulate an administrator from *de novo* review. The First Circuit dealt with similar language in *Brigham v. Sun Life of Canada*, 317 F.3d 72 (1st Cir. 2003). The policy at issue provided that the administrator "must be provided with such evidence *satisfactory to us* as we may reasonably require under the circumstances." *Id*. at 81

---

[7] The safe harbor language adopted was: "The plan administrator has discretionary authority to grant or deny benefits under this plan." *Feibusch v. Integrated Device Tech., Inc.*, 463 F.3d 880, 883 (9th Cir. 2006).

16

(emphasis in original). The court noted that "[c]ircuits that have considered similar language view the 'to us' after 'satisfactory' as an indicator of subjective, discretionary authority on the part of the administrator, distinguishing such phrasing from policies that simply require 'satisfactory proof' of disability, without specifying who must be satisfied." *Id.* It concluded that the language "trigger[ed] discretionary review."[8] *Id.* at 82.

Similarly, in *Nance v. Sun Life Assurance Co. of Canada*, 294 F.3d 1263, 1267-68 (10th Cir. 2002), the Tenth Circuit held that the policy language adequately conferred discretion. The language at issue in the insurance policy required that "[p]roof must be satisfactory to Sun Life" before benefits would be paid. *Id.* at 1267. The court was careful to "caution [] that plan drafters who wish to convey discretion to plan administrators are ill-advised to rely on language that is borderline in accomplishing that task." *Id.* at 1268 n.3. However, it ultimately held that the "satisfactory to Sun Life" language "suffice[d] to convey discretion to Sun Life in finding the facts relating to disability." *Id.* at 1268; *see also Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 806 (8th Cir. 2002) (a plan sufficiently conferred discretion because it "specifie[d] that the employee must provide written

---

[8] However, the First Circuit also noted that there may be "an increasing recognition of the need for the clearest signals of administrative discretion." *Brigham v. Sun Life of Can.*, 317 F.3d 72, 82 (1st Cir. 2003).

17

proof of continued total disability" and "that such proof must be satisfactory to [the plan administrator]").[9]

---

[9] Additionally, it appears that the Fourth, Sixth, and Eleventh Circuits would hold that "satisfactory to us" language confers discretion. In *Gallagher v. Reliance Standard Life Insurance Co.*, the Fourth Circuit held that a plan calling for "satisfactory proof " did not grant discretion but explained, in dicta, that had the plan called for "proof of … disability that is satisfactory to [the plan administrator]" it would require "proof of a total disability that [the plan administrator] finds subjectively satisfactory … and [the court] would review [the plan administrator's] denial of [the insured's] claim for abuse of discretion." 305 F.3d 264, 269 (4th Cir. 2002) The Sixth Circuit goes further, holding that any plan requiring "satisfactory proof" or "satisfactory evidence" grants discretion, regardless of whether it specifies who must be satisfied or to whom the evidence must be submitted. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 (6th Cir. 1998) ("[T]his 'right to require … satisfactory evidence' means, semantically, that the evidence must be satisfactory to [the plan administrator]. … We therefore conclude that the plan clearly grants discretion."). The Eleventh Circuit seems to follow a similar rule, holding, without discussion, that a plan requiring submission of "satisfactory proof of Total Disability to [the plan administrator] … . gives the administrator discretion to determine eligibility for benefits." *Levinson v. Reliance Standard Life Ins.*, 245 F.3d 1321, 1324-25 (11th Cir. 2001); *see also Tippitt v. Reliance Standard Life Ins.*, 457 F.3d 1227,

18

We find the reasoning of the Second, Seventh and Ninth Circuits persuasive. To be insulated from *de novo* review, a plan must "communicate the idea that the administrator not only has broad-ranging authority to assess compliance with pre-existing criteria, but also has the power to interpret the rules, to implement the rules, and even to change them entirely." *Diaz*, 424 F.3d at 639. We agree that "[n]o single phrase such as 'satisfactory to us' is likely to convey enough information to permit [an insured] to distinguish between plans that do and plans that do not confer discretion on the administrator." *Id.*

Specifically, the language at issue here "does not alert the plan participant to the possibility that [LINA] has the power to re-define the entire concept of [a covered loss] on a case-by-case basis." *Id.* Indeed, the only discretion reserved by this single phrase, nested within a section wholly regarding the procedural requirements for submission of a claim, is "the inevitable prerogative to determine what *forms* of proof must be submitted with a claim – something that an administrator in even the most tightly restricted plan would

1233-34 (11th Cir. 2006) (explaining that Levinson is the law of the Circuit and, therefore, that a plan requiring the insured to "submit[] satisfactory proof of Total Disability to [the plan administrator]" granted discretion to that administrator).

19

have to do."[10]  *Id.* (emphasis in original).  In other words, it is not clear whether "satisfactory to Us" means "electronic proof of loss [in a form] satisfactory to Us" or "electronic proof of loss [substantively and subjectively] satisfactory to Us."  We resolve this ambiguity in favor of the insured:

> [T]he administrator's burden to demonstrate insulation from *de novo* review requires either language stating that the award of benefits is within the discretion of the plan administrator or language that is plainly the functional equivalent of such wording.  Since clear language can be readily drafted and included in policies, even in the context of collectively bargained benefit plans when the parties really intend to subject claim denials to judicial review under a deferential standard, courts should require clear language and *decline to search in semantic swamps for arguable grants of discretion*.

---

[10] In this way, the "satisfactory to Us" language in the Policy at issue here, which is completely nested within a section regarding procedural requirements, is also distinguishable from the full sentences at issue in *Nance v. Sun Life Assurance Co. of Canada*, 294 F.3d 1263, 1267 (10th Cir. 2002) ("Proof must be satisfactory to Sun Life."), and *Brigham*, 317 F.3d at 81 ("If proof is required, we must be provided with such evidence satisfactory to us as we may reasonably require under the circumstances.").

*Kinstler*, 181 F.3d at 252 (emphasis added).

If an administrator wishes to insulate its decision to deny benefits from *de novo* review, we suggest that it adopt the following "safe harbor" language: "Benefits under this plan will be paid only if the plan administrator decides in [its] discretion that the applicant is entitled to them." *Herzberger*, 205 F.3d at 331. This is not to say that "magic words" are required for a policy to reserve discretion. *See Luby*, 944 F.2d at 1180. Instead, the Policy at issue here simply does not clearly indicate that LINA has discretion to "interpret the rules, to implement the rules, and even to change them entirely," and thus the District Court erred in applying abuse-of-discretion review rather than *de novo* review to LINA's decision. *Diaz*, 424 F.3d at 639.

Because we have concluded that a *de novo* standard of review applies, we need not reach Plaintiff's argument regarding LINA's conflict of interest in being both the payor and administrator of benefits. That issue is only pertinent to

an abuse-of-discretion standard of review.[11] On remand, the District Court must determine whether LINA properly denied Plaintiff recovery under the Policy. This determination may be based on any information before the administrator initially, *Hoover*, 290 F.3d at 809, as well as any supplemental evidence, such as Dr. Gindea's report. *See*, *e.g.*, *Luby*, 944 F.2d at 1184-85 ("[A] district court exercising *de novo* review over an ERISA determination between beneficiary claimants is not limited to the evidence before the Fund's administrator."); *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993) (district courts have discretion during *de novo* review to consider evidence not before administrator); *Perry*, 900 F.2d at 966 (citing 2 S. Childress & M. Davis, *Standards of Review* § 15.2 (1986)).

---

[11] We also decline to address Plaintiff's argument that LINA's motion for summary judgment should have been denied because a genuine issue of material fact existed. The District Court should have the first opportunity to apply the correct standard of review to the facts. *See*, *e.g.*, *Feisbusch*, 463 F.3d at 886 (remanding); *Diaz*, 424 F.3d at 640 (same); *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1162 (9th Cir. 2001) ("Normally, upon discovering that the district court used the wrong standard of review in evaluating a plan administrator's decision to deny benefits, we would reverse and remand.").

## B.   The District Court's Interpretation of Policy Language

Although we have already determined that the District Court erred in applying an abuse-of-discretion standard, we consider nonetheless Plaintiff's second contention to provide guidance to the District Court on remand.  Plaintiff argues that the District Court misinterpreted the Policy because the Medical Exclusion Provision was ambiguous at best.  Specifically, she argues that LINA should not be able to apply the Exclusion to Viera's Coumadin treatment based on a canon of statutory construction, the last-antecedent rule, and the general maxim that ambiguous contract language should be construed against the drafter.[12]  The District Court rejected this argument and held that "although a strict application of the last-antecedent rule supports Plaintiff's interpretation, sufficient indicia of contrary meaning exist to overcome this maxim of interpretation." *Viera*, 2010 WL 1407312, at *10.

We review the legal interpretation of contractual language *de novo*.  *Heasley*, 2 F.3d at 1254.  The last-antecedent rule is a canon of statutory interpretation, but we have extended application of the rule to a life insurance policy as well.  *See J.C. Penney Life Ins. Co. v. Pilosi*, 393

---

[12] Plaintiff also argued before the District Court that summary judgment should be granted in its favor because LINA waived its right to exclude coverage because it had notice of Viera's atrial fibrillation condition prior to issuing the Policy.  (App. at 23.)  The District Court rejected this argument, and Plaintiff does not appeal it.

23

F.3d 356, 365-66 (3d Cir. 2004). The rule provides "that qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding and not to others more remote." *Stepnowski v. C.I.R.*, 456 F.3d 320, 324 (3d Cir. 2006) (quoting *United States v. Hodge*, 321 F.3d 429, 436 (3d Cir. 2003)). In other words, if a sentence reads "A or B with respect to C," it should be interpreted as containing two items: (1) "A" and (2) "B with respect to C." *Id.* at 324 n.7. However, the last-antecedent rule "is not an absolute and can assuredly be overcome by other indicia of meaning." *Pilosi*, 393 F.3d at 365 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)).

> The Medical Exclusion Provision at issue states:
>
> [B]enefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from . . . [s]ickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food.

(App. at 83.) Plaintiff argues that the placement of the comma immediately preceding the term "bacterial or viral infection" suggests that the term "medical or surgical treatment thereof" would not be extended to the other terms "sickness, disease, bodily or mental infirmity." In other words, Plaintiff contends that the Policy excludes coverage only for "medical treatment" of "bacterial or viral

24

infection[s]" and does not exclude coverage for "medical treatment" of "bodily infirmities" like atrial fibrillation. The District Court agreed with Plaintiff's literal application of the last-antecedent rule. However, the District Court ultimately concluded that there were sufficient indicia of meaning that contradicted Plaintiff's interpretation. Specifically, the District Court pointed out that:

> (1) the term "Covered Accident" does not include an injury or accident "contributed to by disease, Sickness, mental or bodily infirmity"; (2) the cover page of the [] Policy states that it is a "group accident" policy and "does not pay benefits for loss caused by sickness;" and (3) the scope of the [] Policy deals with "accidental death and dismemberment."

*Viera*, 2010 WL 1407312, at *10. The District Court appropriately looked to and analyzed the indicia of meaning in the Policy so as not to "contort the language beyond its limits." *Pilosi*, 393 F.3d at 365. Where the meaning of the contract language is clear, the last-antecedent rule should not be used to create ambiguity.

Plaintiff also argues that the inherent ambiguity in the plan must be construed against LINA under the doctrine of contra proferentem. "Whether an ambiguity exists is a question of law." *12th St. Gym, Inc. v. Gen. Star Indem. Co.*, 93 F.3d 1158, 1165 (3d Cir. 1996). Under Pennsylvania law, an insurance contract is ambiguous where it: "(1) is reasonably susceptible to different constructions, (2) is obscure in meaning through indefiniteness of expression, or

(3) has a double meaning."[13]  *Lawson v. Fortis Ins. Co.*, 301 F.3d 159, 163 (3d Cir. 2002).  To be sure, we must construe ambiguous policy provisions against the drafter of the contract once a determination of ambiguity has been made, but the language at issue here is not ambiguous.  *Pilosi*, 393 F.3d at 363; *12th St. Gym*, 93 F.3d at 1166.

As noted above, Plaintiff's alternative reading of the provision under the last-antecedent rule is not reasonable. "Disagreement between the parties over the proper interpretation of a contract does not necessarily mean that a contract is ambiguous."  *12th St. Gym*, 93 F.3d at 1165. Where there is only one reasonable interpretation of a contract, that interpretation controls because "[s]traightforward language in an insurance policy should be given its natural meaning."  *Lawson*, 301 F.3d at 162.  The District Court correctly interpreted the Medical Exclusion Provision.

IV.

For the foregoing reasons, we will reverse in part, affirm in part, and remand to the District Court for proceedings consistent with this opinion.

---

[13] Neither party disputes that Pennsylvania law applies here.