**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4140
_____


MARY FENDER,
                              Appellant

v.

DELAWARE DIVISION OF REVENUE;
MICHAEL SMITH, In his individual and official capacities;
THOMAS EOPPOLO, In his individual and official capacities


_____


On Appeal from the United States District Court
for the District of Delaware
(District Court No.: 1-12-cv-01364)
District Judge:  Honorable Gregory M. Sleet

_____




Submitted under Third Circuit LAR 34.1(a)
on September 8, 2015




(Opinion filed: October 14, 2015)



Before:  VANASKIE, NYGAARD, and RENDELL <u>Circuit Judges</u>


_____

**RENDELL**, Circuit Judge:

Appellant Mary Fender appeals the District Court's grant of summary judgment to the Delaware Division of Revenue ("DOR"), her former employer, and Michael Smith and Thomas Eoppolo, her former supervisors, on her § 1983 claim for First Amendment retaliation and her claim for violation of the Delaware Whistleblower Protection Act ("WPA"). We will affirm the grant of judgment in favor of the DOR on the WPA claim but vacate the judgment for Smith and Eoppolo on the First Amendment claim because we disagree with the District Court's conclusion that Fender was complaining only about matters of private, not public, concern.

## I. Background

Fender began working for the DOR in 2003 as a tax auditor. Her position was originally in Wilmington, but in 2005 or 2006, she transferred to New Castle. Between 2009 and 2010, the DOR reorganized and Eoppolo became her direct supervisor, with Smith supervising Eoppolo. In April 2010, Smith transferred Fender's position back to Wilmington and asked her to return there by May 2010. She returned to Wilmington on December 14, 2010 and then, six days later, she requested a transfer to the Dover office. Smith rejected her transfer request. After rejecting her transfer, Smith noted in an email

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

that Fender was "trying to sell her agenda." (App. 333.) In his deposition, when asked "what agenda is she trying to sell," Smith responded that Fender's "idea was that the Division of Revenue in her opinion discriminated against women as a whole." (App. 581-82.)

On December 22, 2010, Fender complained to DOR Deputy Director Colleen Yegla about the transfer denial and about generally unfair treatment. Fender noted that Smith had recently approved a transfer request for a male employee and claimed that her transfer request was denied because she was a woman. Fender also complained that Eoppolo had called her on her personal cell phone while she was at a doctor's appointment, and that he did not approve her financial transactions promptly.

Fender filed an EEOC complaint on February 11, 2011 alleging sex and age discrimination against Smith and Eoppolo. Her EEOC complaint described the incident when Eoppolo called her while she was at the doctor and Smith's denial of her transfer request. Fender said that Eoppolo called at the doctor's appointment because "this was him trying to intimidate me. He does not chek [sic] up on male counterparts." (App. 808.) She also said that she "spoke about this with a coworker in the HR department and her response was she didn't know how they get away with some of the things they do. She said they were referred to as the 'boys club.'" (App. 808.) In the EEOC form, Fender referenced Florence Smith, a woman who "has been waiting for her test for promotion to be graded for 1 yr. → male counterparts got interviews for their promotions." (App. 809.)

3

Fender claims that after she filed her EEOC complaint, her supervisors stopped her from starting new projects, gave her pre-existing projects to others, and limited the number of letters that she could send. She also claims that a coworker told her that "he was not supposed to talk to me, that I was blackballed, and when they want to try to find a way to get you out they will." (App. 715.) Eoppolo asked her to submit a report every Monday, tracking her activity from the previous week, even though other male auditors at her level were not required to report weekly.

In July of 2011, Fender was in a car accident and went on short-term disability. She exhausted her allotted leave before returning to work. The DOR said she could return to her previous job on a probationary basis, but Fender refused and her employment with DOR concluded.

Fender filed suit asserting claims for, inter alia, First Amendment retaliation and violation of the WPA. The District Court granted summary judgment to Appellees on all claims. It held that Fender could not establish a First Amendment retaliation claim because her complaints did not address matters of public concern. The District Court explained that Fender "is unable to point to facts in the record supporting her position that sex discrimination, as a larger problem within the DOR, was at the heart of her complaints." (App. 11.) The District Court noted that Fender's complaints to Yegla focused on "'unfair treatment' specific to Fender—*e.g.*, Eoppolo calling Fender's cell phone and failing to approve Fender's financial transactions in a timely manner; Smith and Eoppolo's refusal to grant Fender's transfer request." (App. 11.) It reasoned that "Fender fails to provide any evidence that the specific complaints . . . were anything other

4

than the personal grievances of an employee, seeking personal relief." (App. 12.) Because the District Court concluded that Fender had not spoken about a matter of public concern, it did not assess the other elements of a First Amendment retaliation claim.

The District Court also held that Fender failed to establish a WPA claim because the WPA protects only employees who have reported health, safety, or environmental hazards or financial mismanagement.

## II. __Analysis__

"We review a district court's grant of summary judgment *de novo* . . . ." *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011). "In conducting our review, we view the record in the light most favorable to the party opposing the motion and draw all reasonable inferences in his favor." *Baldassare v. State of N.J.*, 250 F.3d 188, 192 n.1 (3d Cir. 2001).

We will vacate the District Court's judgment in favor of Smith and Eoppolo on Fender's First Amendment retaliation claim because there is evidence that Fender was complaining about gender discrimination generally, as opposed to personal grievances. A public employee's statement is protected by the First Amendment when, inter alia, "the statement involved a matter of public concern." *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)). "A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community." *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003) (quoting *Baldassare*,

5

250 F.3d at 195). Gender discrimination is clearly a matter of political and social concern. *See Azzaro v. Cnty. of Allegheny*, 110 F.3d 968, 978 (3d Cir. 1997) (holding that "gender discrimination" is "as much a matter of public concern as racial discrimination").

The issue here is whether Fender's complaints were, in fact, about gender discrimination or were only about denial of her transfer request, delayed approval of her financial transactions, and the phone call while she was at a doctor's appointment. In other words, "public speech cannot 'constitute[] merely personal grievances.'" *Brennan*, 350 F.3d at 412 (quoting *Feldman v. Phila. Hous. Auth.*, 43 F.3d 823, 829 (3d Cir. 1994)). "This does not, however, suggest that speech which is motivated by private concern can never qualify as protected speech. It clearly can if it addresses a matter that concerns the public as well as the speaker." *Id.* There is evidence indicating that Fender complained about gender discrimination, not merely her private grievances. First, Fender's supervisor Smith stated that Fender was trying to sell her agenda "that the Division of Revenue in her opinion discriminated against women as a whole." (App. 582.) Second, Fender's EEOC complaint states that her supervisor does not check up on male workers and that her coworker in Human Resources referred to "the 'boys club'" and said "she didn't know how they get away with some of the things they do." (App. 808.) And third, Fender noted in her EEOC form that a woman, "ha[d] been waiting for her test for promotion to be graded for 1 yr." even though "male counterparts got interviews for their promotions." (App. 809.) This evidence indicates that Fender was

6

complaining about gender discrimination generally and, therefore, that she spoke about a matter of public concern.

We will, however, affirm the District Court's ruling on the WPA claim. The WPA protects employees who report violations. It defines "violation" as "an act or omission" that is "[m]aterially inconsistent with, and a serious deviation from, standards implemented . . . to protect employees or other persons from health, safety, or environmental hazards" or "[m]aterially inconsistent with, and a serious deviation from, financial management or accounting standards implemented . . . to protect any person from fraud, deceit, or misappropriation of public or private funds or assets." Del. Code Ann. tit. 19, § 1702(6). Gender discrimination simply does not fall within this rubric.

We will thus vacate the District Court's judgment as to Fender's First Amendment retaliation claim and remand for the District Court to assess the other elements of her First Amendment claim. We will affirm the District Court's judgment on Fender's WPA claim.