**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2952
_____

GIOVANNA REICHARD,
                                        Appellant

v.

UNITED OF OMAHA LIFE INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5:17-cv-02885)
District Judge: Honorable Edward G. Smith
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 13, 2019

Before: HARDIMAN, GREENAWAY, JR., and BIBAS, *Circuit Judges*

(Filed: February 24, 2020)

———————————

OPINION[*]

———————————

BIBAS, *Circuit Judge*.

Even if one doctor finds a patient disabled, an insurer can reasonably credit other doctors who examine her and disagree. United of Omaha Life Insurance denied Giovanna Reichard continued long-term disability benefits. After losing her internal appeal within United of Omaha, Reichard brought this suit. She sought discovery of her appeal reviewer's alleged conflict of interest, which the District Court denied. The District Court eventually granted summary judgment for United of Omaha. Reichard challenges both decisions.

We will affirm. The District Court's discovery ruling was reasonable, so we have no basis to disturb it. And we cannot override the insurer's decision to deny benefits unless we find that it was arbitrary and capricious, a deferential standard of review. As the District Court held, United of Omaha's decision was supported by substantial evidence. Most of the doctors who examined Reichard found that even with her physical limitations, she could still perform sedentary or light jobs. And the report of the one doctor who found her totally disabled appeared to be internally inconsistent. Reichard's objections to the insurer's procedures do not persuade us, and the alleged conflict of interest made no difference. So the insurer's denial of benefits was not arbitrary and capricious, and the District Court was correct to grant summary judgment for United of Omaha.

———————————

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

2

# I. BACKGROUND

## A. Facts

1. *The insurance plan's terms.* For four years, Reichard worked as a nurse for Coordinated Health, a hospital. She suffers from headaches, arthritis, Crohn's disease, and fibromyalgia. Eventually, because of her illnesses, she had to leave her job. As an employee, she was covered by Coordinated Health's group disability-insurance plan (the Plan), administered by United of Omaha. So when she left, she started collecting disability benefits under the Plan.

The Plan's definition of "disability" shifted over time. For up to two years, Reichard could get long-term disability benefits if she could not do her old job and could not earn at least 80% of her pre-disability income. But after two years, those benefits would end unless her disability prevented her from doing any job "for which [she was] reasonably fitted by training, education, or experience" that would pay at least 60% of her pre-disability earnings within a year of going back to work. *Reichard v. United of Omaha Life Ins. Co.*, 331 F. Supp. 3d 435, 443 n.5 (E.D. Pa. 2018).

2. *United of Omaha grants Reichard long-term disability benefits for the first two years.* In her initial applications for short- and long-term disability benefits, Reichard submitted reports from Dr. Mark Osterman, her gastroenterologist, and Dr. Nicole Chiappetta, her rheumatologist. Dr. Osterman's report noted her arthritis symptoms and Crohn's disease and said tentatively that she could go back to work in six months.

Dr. Chiappetta also noted her Crohn's disease and the pain in her knees and hip. The doctor found that during an eight-hour workday, Reichard could sit for six hours, walk for

two, and stand for one. She would need frequent breaks and could not climb, lift more than twenty pounds, or squat for more than twenty minutes. Even though she found that Reichard was only partially impaired, Dr. Chiappetta wrote that Reichard could not work. The doctor did not clarify whether she meant that Reichard could not work at all or that she could not do her old job.

United of Omaha granted Reichard's application for long-term disability benefits. But it notified her that in two years, the Plan's definition of "disability" would change.

3. *After two years, United of Omaha denies Reichard long-term disability benefits.* To gauge whether Reichard was disabled under the narrower definition, United of Omaha had four health-care professionals review her file. Based on their assessments, it denied her claim for continuing benefits.

First, a United of Omaha nurse reviewed Reichard's file and wrote a report. She found that Reichard's Crohn's disease was stable. She noted that Reichard's depression, headaches, hip pain, and vitamin deficiencies did not impair her ability to work. She also looked at images of Reichard's left knee, which had recently been replaced, and found it normal. The nurse concluded that Reichard could work a job that was not too taxing physically, if she could reposition herself and take short walks every couple of hours.

Second, a vocational rehabilitation consultant assessed Reichard's skills. Based on Reichard's work history and medical conditions, he found that she could work as an office nurse, school nurse, medical insurance clerk, hospital-admitting clerk, or administrative clerk. All but one of those jobs would pay more than 60% of her pre-disability earnings, and all were available in her area.

4

Third, a physician reviewed Reichard's medical records. Like the nurse, he found that her Crohn's disease was stable and that she was not functionally impaired. The physician purported to agree with Dr. Osterman on that point, though we have no record of any such statement by Dr. Osterman on the date he referenced.

Fourth, Dr. Golombek, a board-certified rheumatologist, examined Reichard, reviewed her records, and wrote his own report. In his report, he referred to the reports of Dr. Osterman, Dr. Chiappetta, a nurse practitioner, and the vocational rehabilitation consultant, but made typos in each of their names or titles. He concluded that Reichard could sit for six to eight hours per day and could both stand and walk for up to an hour straight.

After reviewing the four reports, United of Omaha denied Reichard's claim. Its denial letter to Reichard summarized the experts' findings and concluded that Reichard could do sedentary or light jobs, including the five listed by the consultant.

4. *Reichard's internal appeal.* Reichard filed an administrative appeal of the decision to deny her benefits. Her appeal criticized United of Omaha's supposed use of outdated and incorrect information, its failure to consider her medications' side effects, and its exclusion of some records. United of Omaha referred Reichard's appeal to an in-house appeal reviewer, Dr. Thomas Reeder. Dr. Reeder, who is board certified in internal medicine, also served as United of Omaha's senior vice president and medical director.

As part of his review, Dr. Reeder analyzed Reichard's file, including the reports of doctors who had examined and treated her. He reviewed records from Reichard's neurologist and orthopedist, cataloguing her headaches and knee pain. Dr. Reeder noted the medications she had been taking and their side effects, and described her knee replacement and

5

improved knee condition. He also found that Dr. Chiappetta's conclusion that Reichard could not work conflicted with the actual physical limitations Dr. Chiappetta had documented. While Dr. Reeder recognized Reichard's long history of gastrointestinal issues, he found no evidence that she could not do light or sedentary work.

Dr. Reeder sent letters to four of Reichard's doctors, describing his findings and asking them to reply if they disagreed. Only her neurologist responded, and that doctor voiced no objection.

United of Omaha thus denied Reichard's appeal. In doing so, it relied on Reichard's file and medical records, Dr. Reeder's review, and the lack of any objection from the four doctors to whom Dr. Reeder had sent his findings.

5. *Reichard's Social Security benefits.* At the same time, Reichard was seeking Social Security disability benefits. At first, the Social Security Administration denied her benefits. But after a hearing, it reversed course and granted them. The Social Security Administration's notice of award was dated twelve days after United of Omaha's letter denying her appeal.

## B. Procedural background

After losing her internal appeal, Reichard sued United of Omaha in federal district court under the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. No. 93-406, 88 Stat. 829. ERISA gives a cause of action to those whose insurers have denied them benefits under an employee benefit plan. 29 U.S.C. §§ 1002(7), 1132(a)(1)(B).

Reichard moved to compel discovery on Dr. Reeder's possible conflict of interest. The District Court denied the motion, finding that the discovery request would

6

disproportionately burden United of Omaha and disserve ERISA's goal of resolving claims efficiently. It later granted summary judgment for United of Omaha on the merits and denied Reichard's cross-motion for summary judgment. 331 F. Supp. 3d at 485.

Reichard now appeals the denial of her motion to compel discovery. She also appeals the denial of her summary judgment motion and the grant of summary judgment for United of Omaha. The District Court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). We have jurisdiction under 28 U.S.C. § 1291.

We review the District Court's denial of Reichard's motion to compel discovery for abuse of discretion. *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 354 (3d Cir. 2003). That means we will not disturb it unless "no reasonable person would adopt the district court's view." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002) (quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000)).

We review the District Court's summary judgment rulings de novo. *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011). Because the policy delegates discretion to the plan administrator, our (and the District Court's) review of the plan administrator's decision is deferential. We will overturn the denial of benefits only if it was arbitrary and capricious, meaning that it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 844–45 (3d Cir. 2011) (quoting *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)).

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING REICHARD'S MOTION TO COMPEL DISCOVERY

In the District Court, Reichard sought discovery on Dr. Reeder's alleged conflict of interest. Dr. Reeder was the sole medical reviewer of her appeal. But he also worked as United of Omaha's senior vice president. So, she argued, he had an incentive to deny benefits. She sought information about his "batting average": the fraction of benefits denials he affirmed on appeal. In other words, she wanted access to other appeals for which he had served as the medical reviewer. Presumably, she wanted to use evidence of a high denial rate to show that his business-side duties were biasing his medical judgment.

The District Court's denial of discovery was reasonable. Discovery must always be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Here, there was evidence that combing its databases for this information would have imposed a substantial burden on United of Omaha. Plus, the information's value to Reichard would have been minimal at best. A low reversal rate would not prove bias or a conflict of interest. Rather, Reichard would have to show that each of those decisions was unreasonable based on the evidence in each file. Doing so would require a mini-trial on each of these other appeals. Even if Reichard showed that, it would still not change her burden to show that *on the administrative record here*, the denial of *her* benefits claim was unsupported by substantial evidence. Given the high cost of producing the evidence and its minimal probative value, the District Court reasonably denied the motion.

Reichard emphasizes the seriousness of Dr. Reeder's alleged bias. But the District Court saw the conflict of interest. It explicitly noted it and factored it into its analysis. And

8

it found that Reichard did not need this discovery to show Dr. Reeder's potential bias or that the bias had tainted United of Omaha's decision in her case. That conclusion was reasonable. So the District Court did not abuse its discretion in denying her motion to compel discovery.

### III. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT FOR UNITED OF OMAHA

Reichard argues that the District Court should have granted summary judgment to her, not United of Omaha, because "[t]he evidence demonstrates that [she] is totally disabled." Appellant's Br. 43. We do not doubt the seriousness of Reichard's many ailments and of the side effects of her medications. But the issue here is not whether she is sick or disabled in fact. Under her insurance policy, the issue is whether her sickness prevents her from working a job that pays 60% of the salary she earned as a registered nurse.

After considering many doctors' informed views, United of Omaha answered that question "no." Under our deferential standard of review, we agree. Its conclusions rested on substantial evidence and its procedures were fair. So its denial was not arbitrary or capricious.

#### A. Substantial evidence supports United of Omaha's decision

Multiple doctors, including some of Reichard's own doctors, independently found that Reichard could do sedentary or light work. Reichard points to no contrary physical requirement of any of the specific jobs listed by United of Omaha. Nor does she argue that they would not pay 60% of her former salary. Rather, she says she simply cannot work at all.

9

But the only medical evidence supporting her view is Dr. Chiappetta's assessment in her file. No other doctor agreed. Dr. Reeder rejected that lone conclusion as inconsistent with Dr. Chiappetta's own statements about Reichard's functional capabilities. We cannot declare that the analyses of all the other doctors who examined her, Dr. Reeder's conclusions, and United of Omaha's decision relying on those findings were unreasonable or lacked substantial evidentiary support.

## B. The procedural irregularities do not make United of Omaha's decision arbitrary and capricious

United of Omaha's process was not perfect. Reichard criticizes its flaws. Even so, we cannot say that its process was "without reason" or "erroneous as a matter of law." *Miller*, 632 F.3d at 845 (quoting *Abnathya*, 2 F.3d at 45).

1. *United of Omaha's review was full and fair*. First, Reichard argues that she did not receive the "full and fair review" required by ERISA and Department of Labor regulations. Appellant's Br. 46; *see* 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503-1(h). She objects that it did not use a "standardized claims procedure[ ]" (meaning a claims manual). Appellant's Br. 46–47. And she complains that it did not tell her what she needed to submit to support her appeal.

No law or regulation requires insurers to adopt a claims manual. Reichard cites 29 C.F.R. § 2560.503-1(b)(5), which requires claims procedures to "contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently." But this regulation says nothing about

10

claims manuals. It references "plan documents," but only to say that claims decisions must comply with them. Reichard alleges not that United of Omaha failed to follow existing plan documents, but that it should have created *additional* ones. The regulation imposes no such duty.

And though United of Omaha never told Reichard exactly what to submit, there was little doubt about what was required. Reichard and Omaha corresponded at length in finalizing the records to consider on appeal. As a result of those discussions, she submitted extra documentation. She points to no other documents that she would have included if asked. So we are not persuaded.

2. *Dr. Golombek's typos are immaterial*. Reichard also highlights the sloppiness in Dr. Golombek's report. That sloppiness does not inspire confidence. But the mistakes in spelling Dr. Osterman's and Dr. Chiappetta's names, calling Mr. Palmer "Ms. Almer," and calling a nurse "Dr." are only typographical. The same goes for Dr. Golombek's reference to a May 2016 statement by Dr. Osterman that Reichard's Crohn's symptoms were stable. While Dr. Osterman made no such statement on that date, his other diagnostic records can reasonably be read as saying so. In any case, Dr. Chiappetta also described her gastrointestinal symptoms as fairly stable.

3. *Dr. Reeder's conflict of interest is not fatal.* Reichard objects to United of Omaha's reliance on the appellate review of Dr. Reeder. Because he served both as medical director and senior vice president, she argues that he had a structural conflict of interest. We agree that, as a high-ranking officer, he labored under a likely conflict of interest. But that conflict does not automatically invalidate United of Omaha's decision. When reviewing a benefits

determination, "conflicts are but one factor among many that a reviewing judge must take into account." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008).

In granting summary judgment to United of Omaha, the District Court took this conflict into account. It found "some merit to [Reichard's] arguments" and so "weigh[ed] [the conflict] as a factor against" United of Omaha. 331 F. Supp. 3d at 482. It reviewed three other cases in which courts had cast doubt on Dr. Reeder's impartiality. *Id.* at 482–83. And it criticized Dr. Reeder's treating other physicians' silence as agreement with his letter. *Id.* at 483. But it found that this factor did not outweigh the other evidence supporting United of Omaha's decision. *Id.* We agree.

4. *United of Omaha had no reason to foresee the Social Security Administration's later grant of benefits*. Reichard next argues that United of Omaha should have considered the Social Security Administration's decision to grant her disability benefits. But she got that notice *after* United of Omaha had denied her appeal. One can hardly blame United of Omaha for failing to foresee that.

Reichard responds that United of Omaha had referred her to The Advocator Group, which represented her before the Social Security Administration. The Advocator Group had notice of the award several weeks before United of Omaha denied Reichard's appeal. She argues that The Advocator Group was United of Omaha's agent, so we should impute its advance knowledge to United of Omaha.

But we see no principal-agent relationship between United of Omaha and The Advocator Group. United of Omaha's referral was not a "manifest[ation]" by the principal "that the agent shall act on the principal's behalf and subject to the principal's control," as is

required for an agency relationship. Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006). The Advocator Group was working for Reichard, not Omaha. Its correspondence with United of Omaha was limited to the amount of the overpayment she would owe to United of Omaha. And one can hardly fault United of Omaha for failing to consider Social Security benefits that it could not foresee.

5. *The cumulative effect of the errors was insignificant*. Finally, Reichard argues that all the procedural and substantive errors combined to make United of Omaha's decision arbitrary and capricious. But most of her objections are baseless. The whole is little more than the sum of those parts. So it does not satisfy her high burden.

\* \* \* \* \*

We do not doubt that Reichard suffers serious illnesses and side effects. But the issue here is whether she can work at any job that pays 60% of her previous salary. United of Omaha found that she could, and our review of its decision must be deferential. It assessed her functional limitations and listed five specific sedentary or light jobs that she could do. Its decision to deny continued benefits rested on evidence from many doctors, and it reasonably disagreed with the one outlier. So while its procedures may have been imperfect, its ultimate decision was not unreasonable. And the District Court reasonably denied discovery on other cases involving Dr. Reeder. We will affirm.