NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2834
_____

JOHN D. BICKHART,
                                                    Appellant

v.

CARPENTERS HEALTH AND WELFARE FUND OF PHILADELPHIA AND
VICINITY; THE BOARD OF ADMINISTRATION OF THE MEMBERS
CARPENTERS HEALTH AND WELFARE FUND OF PHILADELPHIA AND
VICINITY AND ITS INDIVIDUAL MEMBERS; EDWARD CORYELL; THOMAS
BRESLIN; EDWARD CORYELL, JR.; MICHAEL HAND; MICHAEL MORROW;
ROBERT NAUGHTON; JAMES R. DAVIS; FRANK BOYER; JOSEPH CLEARKIN;
JACK HEALY; FRANK LUTTER; PHILIP RADOMSKI; PIOTR TONIA, Fund
Coordinator and Coordinator of Benefit Funds for the Carpenters Health and Welfare
Fund of Philadelphia and Vicinity
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E. D. Pa. No. 5-15-cv-05651)
District Judge: Honorable Jeffrey L. Schmehl
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 10, 2018

Before:  CHAGARES, VANASKIE and FISHER, *Circuit Judges*.

(Opinion Filed: May 7, 2018)

———————

OPINION[*]

———————

FISHER, *Circuit Judge*.

John D. Bickhart, a retired carpenter, had his medical benefits terminated by the Carpenters Health and Welfare Fund of Philadelphia and Vicinity. Following exhaustion of his administrative remedies, Bickhart sued, seeking reinstatement of his medical benefits and monetary damages under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* Following discovery, the District Court granted summary judgment for the defendants. For the reasons that follow, we will affirm the judgment of the District Court.

I

Bickhart retired as a carpenter in 2007 and began receiving a monthly pension as well as medical benefits for him and his wife. The medical plan imposed severe restrictions on post-retirement work. At the time, Section 3.04 of the plan provided that all benefits would terminate if:

> (a) The Retiree returns to work in any phase of the construction industry and works more than 40 hours in Covered Employment for which contributions to the Fund are required in a calendar month.
> (b) A Retiree works in the construction industry in work, which is not Covered Employment for one (1) or more hours in a calendar month.[1]

———————————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Section 3.04 required retirees to report any post-retirement work to the Fund. The section also authorized retirees to seek an advance determination of whether prospective employment would trigger termination of benefits. If the work in question would lead to termination, retirees could seek a limited waiver of the work restriction "in case of labor need."[2]

When Bickhart retired, he signed a form acknowledging his obligation to report any post-retirement work to the Fund.[3] Bickhart also received an annual notice in the mail from 2009 to 2015 reiterating the work prohibition, explaining what kinds of work would trigger termination, and detailing the process for seeking a waiver. In February 2008—roughly one year after his retirement—Bickhart petitioned the Fund for a determination that his employment as a consultant for Turner Construction did not violate the work prohibition. In the alternative, Bickhart requested a waiver to exceed the 40 hour per month limit. Bickhart's request was denied by Edward Coryell, Sr., the Executive Secretary-Treasurer/Business Manager of the Carpenters Regional Council and Co-chair of the Fund's Board of Administration. Bickhart then notified his employer that he could not go back to work. Several months later, Turner Construction requested—and

---

[1] App. 669. "Covered Employment" refers to work for an employer with a Union contract. Such employers are still required to make contributions for any hours worked by a retiree.

[2] *Id.*

[3] App. 535. This particular reporting obligation was specifically tied to the terms of Bickhart's pension payments, not his medical plan.

3

received—a short, one-week waiver for Bickhart in August 2008, but two subsequent requests by the company in September were denied. Bickhart did not request any further waivers, nor did any employer acting on his behalf.

Each year from 2007 to 2014, Bickhart signed a declaration stating that he was in compliance with all post-retirement work restrictions and continued to be entitled to benefits. On each form, Bickhart indicated that he was unemployed.

In early 2009—following the 2008 recession and consequent contractions in the construction industry—Section 3.04 was amended to eliminate the provision permitting covered employment of less than 40 hours per month. As amended, Section 3.04 prohibited all post-retirement construction work of any kind or quantity. The waiver provision remained unaltered. Advance notice of the change was sent to all active and retired carpenters. The notice expressly cautioned that working even one hour a month would jeopardize a retiree's benefits and warned that terminated benefits would not be restored.

In June 2015, a Carpenters Union agent observed Bickhart working at a construction site for International Management Consultants, Inc.—a non-union employer—and notified Coryell. Coryell, in turn, told Piotr Tonia, the Benefits Coordinator for the Fund, whose job included making decisions regarding the termination of retiree medical benefits. Shortly thereafter, Tonia terminated Bickhart's medical benefits and sent him a letter notifying him of this decision. The letter cited Section 3.04

as the basis for the determination and enclosed a copy of the pre-2009 version of the provision. The letter also demanded payment of more than $21,000 for claims paid by the Fund since Bickhart's retirement. Tonia's letter, which was labeled an initial determination, informed Bickhart of his right to appeal to the Board of Administration. Bickhart appealed, not contesting that he had violated the work prohibition, but instead pledging to "never engage in work in the construction industry again."[4]

As part of the appeal process, Bickhart provided his tax returns from 2010 to 2014, which showed income from construction work ranging from $8,000 to $46,000 annually. Tonia helped prepare a memo for the Appeal Committee recommending denial of Bickhart's appeal. The Appeal Committee, comprising voting members Coryell and James Davis, endorsed Tonia's recommendation. The matter was then forwarded to the full Board of Administration, which adopted the recommendation of the Appeal Committee. The Board informed Bickhart of its decision in writing, again referencing the pre-2009 version of Section 3.04.

Bickhart filed suit in the Eastern District of Pennsylvania against the Fund, the Board, each of the individual Board members, and Tonia. Bickhart's complaint seeks reinstatement of his retiree medical benefits and monetary damages of at least $21,000 pursuant to several ERISA provisions: 29 U.S.C. § 1102 (lack of specificity in employee benefit plan), 29 U.S.C. § 1104 (breach of fiduciary duty), and 29 U.S.C. § 1132(a)(1)(B)

---

[4] App. 519.

(enforcement of right to benefits). The defendants filed an answer,[5] and following discovery both parties moved for summary judgment. The District Court denied Bickhart's motion and granted the defendants' motion. Bickhart timely appealed.

II

The District Court had jurisdiction under 29 U.S.C. § 1132(e). We have jurisdiction under 28 U.S.C. § 1291. We review a grant of summary judgment under a plenary standard.[6] Summary judgment is appropriate when there are no genuine disputes as to material facts and the moving party is entitled to judgment as a matter of law.[7]

III

Bickhart raises three principal arguments on appeal. First, he argues that he is entitled to his retiree medical benefits under ERISA. Second, he argues that the District Court erred in holding that Section 3.04's waiver provision satisfies ERISA's specificity requirement. And third, he argues that the District Court erred in denying him equitable relief stemming from Appellees' alleged fiduciary breaches.

*A. Claim for Benefits*

Bickhart claims an entitlement to benefits under 29 U.S.C. § 1132(a)(1)(B), which authorizes civil actions "to recover benefits due . . . under the terms of [a] plan." In evaluating Bickhart's claim, the District Court first had to determine the appropriate

---

[5] The defendants also filed, but eventually dismissed, a counter-claim for recovery of medical claims paid since Bickhart's retirement.

[6] *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).

[7] *Id.*

6

standard of review to apply to the Board of Administration's termination decision. As we review under a plenary standard, our task is the same.

When a participant challenges a denial of benefits under ERISA, the denial is "reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[8] In the latter case, the decision is reviewed under an arbitrary and capricious standard.[9] Whether an administrator is empowered to wield such discretion "depends upon the terms of the plan,"[10] and while there are certainly phrases and formulations that present a close call, this is not one of them. Section 5.10 states, in part, that "[a]ny determination, interpretation, or construction by the Board of Administration is final, conclusive and binding on all parties . . . to the maximum deference permitted by law."[11] In interpreting these unmistakably clear terms, the District Court properly concluded that the Board of Administration's decision is entitled to the more deferential arbitrary and capricious standard of review.

"An administrator's decision is arbitrary and capricious if it is without reason,

---

[8] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).
[9] *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008)).
[10] *Luby v. Teamsters Health, Welfare, & Pension Tr. Funds*, 944 F.2d 1176, 1180 (3d Cir. 1991).
[11] App. 684–85.

unsupported by substantial evidence or erroneous as a matter of law."[12] The Board's

decision here was supported not by merely substantial, but indeed overwhelming

evidence, a conclusion Bickhart leaves largely unassailed. Specifically, the Board had

evidence that Bickhart was caught working for a non-union employer, it had his tax

returns showing several years of disqualifying employment, and it had Bickhart's own

admissions that he had been improperly working in the construction industry since his

retirement.

Bickhart raises two primary and nearly a dozen supplementary arguments against

the Board's decision, but to no avail. First, Bickhart argues that Tonia, rather than the

Board, made the decision to terminate his benefits. This conflates Tonia's initial

determination with the final decision rendered by the Board. When considering a benefits

determination under ERISA, we focus on the final, post-appeal decision.[13] Second,

Bickhart argues that the Board's decision is not entitled to any deference because both

Tonia and the Board relied on the pre-2009 version of Section 3.04, so neither

determination was based on the current plan language. Setting aside the question of

which version of Section 3.04 should apply in this case, it is sufficient to note that the

Board applied the language that is unquestionably more favorable to Bickhart in reaching

---

[12] *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (internal quotation marks omitted) (quoting *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)).

[13] *Funk v. CIGNA Grp. Ins.*, 648 F.3d 182, 192 n.11 (3d Cir. 2011) (citing 29 C.F.R. § 2560.503-1(h)) *abrogated on other grounds by Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651 (2016).

its determination. Any error, therefore, was less than harmless.

Following these two arguments, Bickhart launches a fusillade of "due process" objections to the Board's decision. These arguments (eleven in total) range from the petty to the absurd, e.g., that the Board failed to provide the basis for its decision, that the Board failed to conduct a thorough investigation, and that the Board failed to articulate the precise details of the disqualifying work performed by Bickhart. When a benefits determination is supported by "an abundance of evidence," even "procedural irregularities" in the decision-making process cannot normally render an administrator's decision arbitrary and capricious.[14] Here, Bickhart has not demonstrated any such irregularities, but even assuming such a showing, the abundance of evidence in this case—starting with his own admissions—would still foreclose a finding that the Board's decision was arbitrary and capricious.

### B. ERISA's Specificity Requirement

ERISA requires covered plans to "specify the basis on which payments are made to and from the plan."[15] Bickhart claims that Section 3.04 is fatally ambiguous—thus violating the specificity requirement—because it permits waivers of the work prohibition for, in Bickhart's view, "broadly characterized and undefined reasons."[16] Section 3.04(f) provides, in part, that "[t]he Board of Administration, or one or more members on their

---

[14] *Miller*, 632 F.3d at 846 (quoting *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 526 (3d Cir. 2009)).

[15] 29 U.S.C. § 1102(b)(4).

[16] Appellant Br. 47.

behalf, may waive the work rules on termination on the basis of labor need or other considerations relevant to the purposes of the termination rules."[17] That this provision contemplates discretion in the approval of waivers raises no concerns under ERISA. We have consistently held that ERISA permits case-by-case benefits determinations so long as the plan documents make this feature clear.[18] But more importantly, neither Section 3.04(f)'s specificity nor its practical implementation are remotely relevant to Bickhart's case because he never so much as requested a waiver in the seven years that preceded the termination of his benefits, during which time he was actively employed in the construction industry. The terms of the plan make clear—and pellucidly so—that, absent a waiver, the work Bickhart engaged in (confessedly and perennially) would result in forfeiture of his benefits. At the very least, therefore, the terms of the plan satisfy ERISA's specificity requirement as applied to Bickhart.

## C. Breach of Fiduciary Duty

Finally, Bickhart alleges that the Board of Administration, its members, and Tonia violated ERISA's standard of care for fiduciaries.[19] At its core, this claim is indistinguishable from the entitlement to benefits claim. It alleges nearly identical misconduct—e.g., inadequate notice about the termination rule, insufficient investigation, and inadequate justification—and seeks nearly identical relief—e.g., an injunction

---

[17] App. 669.
[18] *Hamilton v. Air Jamaica, Ltd.*, 945 F.2d 74, 77–78 (3d Cir. 1991).
[19] 29 U.S.C. § 1104(a).

preventing the Board from enforcing its decision against Bickhart, restoration of Bickhart's benefits, and monetary damages. This Court is wary of fiduciary breach claims under ERISA that, as here, are "actually [claims] based on denial of benefits under the terms of [a] plan."[20] In such instances, the alleged fiduciary breaches are inseparable from the claim for benefits, and do not afford a free-standing basis for relief.[21] Bickhart's claim fits this description perfectly, so the District Court properly entered judgment in favor of the Board and others for the same reasons as those justifying summary judgment on Bickhart's claim for benefits.[22]

IV

We will affirm the District Court's judgment.

---

[20] *D'Amico v. CBS Corp.*, 297 F.3d 287, 291 (3d Cir. 2002).

[21] *Id.*; *see Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (describing equitable relief as not "appropriate" where Congress has otherwise provided adequate relief under ERISA).

[22] The equitable relief sought in the First Amended Complaint focuses solely on Bickhart and his benefits. No doubt hoping to put some daylight between his fiduciary claim and his benefits claim, Bickhart now offers several ideas for more broadly applicable equitable relief, e.g., training for the Board, clarifications to the Retiree Booklet, etc. These efforts are in vain, however, as Bickhart's complaint leaves no doubt as to the common core of the two claims.