**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 1, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TOMMY E. SPRADLEY, an
individual resident of Wagoner
County, Oklahoma,

        Plaintiff–Appellee,

v.

THE OWENS-ILLINOIS HOURLY
EMPLOYEES WELFARE BENEFIT
PLAN, an entity amenable to suit
pursuant to 29 U.S.C. 1132(d)(1),

        Defendant–Appellant.

No. 10-7100

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 6:09-CV-00460-RAW)**

---

Brian T. Ortelere of Morgan, Lewis and Bockius LLP, Philadelphia, Pennsylvania
(Kevin D. Gordon and Alison M. Howard of Crowe & Dunlevy, P.C., Oklahoma
City, Oklahoma; Joseph B.G. Fay and Erica E. Flores of Morgan, Lewis and
Bockius LLP, Philadelphia, Pennslyvania, with him on the briefs) for
Defendant–Appellant.

James W. Dunham, Jr., Tulsa, Oklahoma, for Plaintiff–Appellee.

---

Before **LUCERO**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

      This is an ERISA case in which the district court overturned an employee

benefit plan's denial of a former employee's claim for permanent and total disability life insurance benefits. On appeal, Defendant Owens-Illinois Hourly Employees Welfare Benefit Plan contends the district court erred in rejecting Defendant's argument that the employee was not eligible for this benefit under the Plan's life insurance coverage provisions because his PTD life insurance claim was not filed until after he retired.

## BACKGROUND

Plaintiff Tommy Spradley worked for Owens-Illinois, Inc., for nearly thirty-seven years before a disability caused him to take an early retirement in May 2008 at the age of fifty-five. Approximately nine months after he retired, Plaintiff submitted a written claim to the Plan administrator, the Owens-Illinois, Inc. Employee Benefit Committee. Plaintiff informed the Committee that the Social Security Administration had found him to be permanently and totally disabled as of March 1, 2008, and he accordingly asserted a claim for the Plan's permanent and total disability life insurance benefit. The Committee denied his claim both initially and on administrative appeal.

At this point, we must pause to describe the salient features of the Plan, particularly the PTD life insurance benefit. The Summary Plan Description contains five sections delineated by headings of equal size and prominence: "Healthcare Benefits," "Life and Accident Insurance Benefits," "Disability Benefits," "Retirement Benefits," and "Other Important Information." (*See*

Appellant's App. at 23-28.) A subsection within the "Disability Benefits" section

provides for PTD life insurance benefits. This subsection states in part:

> Permanent and total disability (PTD) life insurance benefits are paid
>
> if:
>
> • You become permanently and totally disabled before you reach
> age 65, and
>
> • File a claim within 12 months after you stop active work with
> the Company, and
>
> • You are unable to work for the rest of your life at any gainful
> occupation for which you are fitted by your education,
> training, or experience or for which you could reasonably
> become fitted.
>
> Alternatively, you can qualify for PTD benefits if, on or after April
> 1, 1999, you are under age 65 and receive an award for Social
> Security Disability benefits. That award must be submitted to the
> insurance company responsible for making the PTD award decisions.
> Claim filing must meet the requirements described in PTD Benefit
> Claims and Appeals on [the following page].

(*Id.* at 121.) The next page contains more information about the PTD life

insurance benefit, including the following information about claim-filing

requirements:

> **PTD Benefit Claims and Appeals**
>
> Claims for PTD benefits must be filed within 12 months from the last
> day worked. If you are receiving Worker's Compensation or if you
> have a disabling condition that may change dramatically, you will be
> required to document your medical condition with the Company
> before the expiration of one year from your last day worked, but you
> could then apply for PTD within five years from your last day
> worked.

> The Company sends a notice by registered mail on or about 90 days before the end of the one-year application period. The notice advises you to file a PTD claim or provide evidence of your medical condition before the 12-month anniversary of your last day worked.

(*Id.* at 122.) This subsection of the Plan contains no cross-references to any other Plan provisions.

In his claim for benefits, Plaintiff argued he qualified for this benefit because he was under age sixty-five, he had received and submitted to Defendant his award of Social Security Disability benefits, and he had submitted his claim for PTD benefits within twelve months after his last day worked. The Committee's initial denial letter said nothing about any of the PTD provisions. Instead, the letter simply stated that Plaintiff's benefit coverage ended on the last day of the month in which his employment ended. For support, the letter cited only to the third page of the Summary Plan Description. This page, which is part of the "Healthcare Benefits" portion of the Plan, describes when "coverage under the medical and dental plans" begins, then states that "[c]overage for you and your dependents ends at the end of the month in which [y]our employment with the Company ends." (*Id.* at 32.) In context, it is clear these provisions refer only to coverage for Owens-Illinois's healthcare program. Nothing on page three of the Summary Plan Description has any relevance to the PTD life insurance benefit sought by Plaintiff.

Plaintiff appealed the denial of benefits, citing again the pertinent language

of the PTD life insurance provision and arguing he had fulfilled all of the requirements to qualify for this benefit. On appeal, the Committee reviewed its earlier decision, then sent Plaintiff a one-page letter reiterating that Plaintiff's benefit coverage ended on the last day of the month in which his employment ended. This time, the Committee cited for support to the first page of the Summary Plan Description. Page one of the Summary Plan Description states, "You are eligible to participate in the Company's healthcare program if you are a full-time active hourly employee of this Company." (*Id.* at 30.) Again, this provision is part of the "Healthcare Benefits" section of the Plan and clearly has no relevance to the PTD life insurance benefit Plaintiff sought. The Committee cited to no other Plan provisions or sections to support its decision.

After his administrative appeal was denied, Plaintiff filed suit under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq (ERISA). He again asserted he was entitled to benefits under the Plan's PTD life insurance provision.[1] In response, Defendant filed a motion for judgment on the administrative record. In this motion, Defendant did not rely on either of the provisions the Committee had relied on in the administrative proceedings; rather,

---

[1] Plaintiff also raised a second claim regarding Defendant's alleged failure to timely comply with his request for copies of the plan documents. The district court denied this claim, concluding that Plaintiff had suffered no prejudice from any failure to respond on Defendant's part. This ruling is not challenged on appeal.

Defendant now argued Plaintiff's coverage had ended based on provisions located within the "Life and Accident Insurance Benefits" section of the Summary Plan Description. Specifically, Defendant argued the PTD life insurance benefit was part of the Plan's life insurance coverage and was thus governed by a coverage provision found in the earlier "Life and Accident Insurance Benefits" section of the Summary Plan Description. This provision states that "life insurance coverage ends at the end of the month in which" an employee retires. (*Id.* at 107.) In its motion for judgment on the administrative record, Defendant finally addressed the specific PTD provisions Plaintiff had urged throughout the administrative proceedings. According to Defendant, these provisions only created a twelve-month application window for PTD life insurance claims to be filed by disabled employees who had stopped active work but had not retired or otherwise terminated their employment.

The district court rejected Defendant's arguments, concluding that Plaintiff was entitled to benefits under the unambiguous language of the Plan or, alternatively, that Defendant's interpretation of ambiguous Plan terms was arbitrary and capricious. The district court accordingly remanded the case for the Committee to reconsider Plaintiff's claim in accordance with this conclusion. This appeal followed.

## DISCUSSION

As an initial matter, we must consider the question of our appellate

jurisdiction. "Aside from a few well-settled exceptions, federal appellate courts have jurisdiction only over appeals from '*final decisions* of the district courts of the United States.'" *Rekstad v. First Bank Sys., Inc.*, 238 F.3d 1259, 1261 (10th Cir. 2001) (quoting 28 U.S.C. § 1291) (emphasis in original). "We analyze the finality of an ERISA remand order . . . on a case-by-case basis applying well-settled principles governing final decisions." *Metzger v. UNUM Life Ins. Co.*, 476 F.3d 1161, 1164 (10th Cir. 2007) (quotation marks omitted). Analogizing to remand orders in the administrative agency context, we have held that ERISA remand orders will not be considered final where there are still issues to be resolved on remand and the parties' legal arguments can be considered in a future appeal after these issues are resolved. *See Rekstad*, 238 F.3d at 1262 (holding that an ERISA remand order was not final where "the appropriate award, if any [was not] self-evident" and the district court expressly stated that either party could obtain court review of the administrator's determination); *Graham v. Hartford Life & Accident Ins. Co.*, 501 F.3d 1153, 1158-59 (10th Cir. 2007) (holding that a remand order was not final where the district court did not decide whether the claimant was eligible for benefits and where the claimant could seek judicial review of an unfavorable administrative decision on remand). However, we have noted that a remand order in the administrative agency context may be considered final when the district court "essentially instructs the agency to rule in favor of the plaintiff." *Rekstad*, 238 F.3d at 1262. Analogously, a remand order

in the bankruptcy context will be considered final where the bankruptcy court on remand "ha[s] only to effectuate a ministerial task[] or conduct additional proceedings involving little judicial discretion." *In re Jones*, 9 F.3d 878, 879 (10th Cir. 1993) (quotation marks omitted). In such cases, the policies behind the finality doctrine—"controlling piecemeal adjudication and eliminating delays caused by interlocutory appeals"—are not implicated. *In re Magic Circle Energy Corp.*, 889 F.2d 950, 953 (10th Cir. 1989).

In this case, the district court held that Plaintiff was eligible for benefits under the plain language of the Plan, and the court's order left no room for the Plan administrator to question this holding on remand. Further, the terms of the Plan clearly define how much of a benefit an eligible employee in Plaintiff's position should receive. Thus, the district court's order essentially left the Plan administrator with nothing to do on remand but award the requested benefits, a ministerial task involving no discretion on the Plan administrator's part. In accordance with our treatment of the finality requirement in other contexts, we conclude that the court's remand order in this case was a final decision for purposes of our appellate jurisdiction.

Exercising jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, we review the district court's decision de novo. As for the Plan administrator's underlying denial of benefits, we apply a deferential standard of review to the extent the administrator actually exercised a discretionary power vested in it by

the terms of the Plan. *See Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1315 (10th Cir. 2009). However, "when reviewing a plan administrator's decision to deny benefits, we consider only the rationale asserted by the plan administrator in the administrative record and determine whether the decision, based on the asserted rationale, was arbitrary and capricious." *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1190 (10th Cir. 2007), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

A plan administrator is required by statute to provide a claimant with the specific reasons for a claim denial. 29 U.S.C. § 1133. The Department of Labor's implementing regulations further explain that the notice of a claim denial must contain, inter alia, "[t]he specific reason or reasons for the adverse determination" and "[r]eference to the specific plan provisions on which the determination is based." 29 C.F.R. § 2560.503-1(g). These regulations "further the overall purpose of the internal review process: 'to minimize the number of frivolous lawsuits; promote consistent treatment of claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement.'" *Glista v. Unum Life Ins. Co.*, 378 F.3d 113, 129 (1st Cir. 2004) (quoting *Powell v. AT&T Comm., Inc.*, 938 F.2d 823, 826 (7th Cir. 1991)). "Those goals are undermined where plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in

reserve rather than communicate it to the beneficiary. Such conduct prevents ERISA plan administrators and beneficiaries from having a full and meaningful dialogue regarding the denial of benefits." *Id.* Thus, the federal courts will consider only "those rationales that were specifically articulated in the administrative record as the basis for denying a claim." *Flinders*, 491 F.3d at 1190. "The reason for this rule is apparent[:] we will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation." *Id.* at 1191 (quotation marks and brackets omitted). A plan administrator may not "treat the administrative process as a trial run and offer a post hoc rationale in district court." *Id.* at 1192.

Defendant argues we should overturn the district court's decision in this case because the district court failed to apply the appropriate deference to the Committee's interpretation of the Plan's life insurance coverage provisions. This argument is premised on a fundamental misrepresentation of the record. As discussed in the recitation of facts above, the Committee's denial of benefits was based only on provisions located within the "Healthcare Benefits" section of the Plan. The Committee's denial letters never even suggested the PTD benefit sought by Plaintiff and described in the "Disability Benefits" section of the Plan might be governed by the coverage provisions located within yet another section

of the Plan, the "Life and Accident Insurance Benefits" section.[2]  Framing the

Committee's administrative denial and Defendant's litigation position in very

broad terms, Defendant asserts it has relied on the same rationale throughout the

process—the rationale that Plaintiff's coverage for the PTD life insurance benefit

terminated when he retired.  However, viewing the denial in such broad terms is

contrary to the specificity required by 29 U.S.C. § 1133 and 29 C.F.R. §

2560.503-1(g).  The specific reasons and specific provisions supporting

Defendant's broad coverage argument have changed, and we will not permit

Defendant to sandbag Plaintiff with its after-the-fact interpretation of an entirely

different section of the Plan.  *Cf. Glista*, 378 F.3d at 128 (refusing to consider a

second rationale for applying a plan's pre-existing condition exclusion where the

---

[2] We note the administrative record includes an unidentified, undated document beginning with the phrase "Thomas Spradley – Talking points." (Appellant's App. at 477.)  This document states:  "It should be noted, when Mr. Spradley retired from O-I, he was no longer covered under the O-I group insurance program.  Accordingly he was not eligible for a PTD benefit under the O-I group insurance program at a later date when he was awarded Social Security Disability Benefits."  (*Id.*)  To the extent this document can be taken as evidence of the Committee's interpretation of the Plan's life insurance provisions at the administrative level, this document still fails to preserve this interpretation for review in federal court, since there is no evidence it was ever provided to Plaintiff.  If anything, this document cuts against Defendant, since it suggests that the Plan administrator may have been aware of this potential basis for denying coverage but chose to hold it in reserve until after the federal litigation commenced, contrary to ERISA's requirements. *See Glista*, 378 F.3d at 130 ("[I]nternal documents cannot satisfy ERISA's requirement that the specific reasons for the denial be articulated to the claimant.  Indeed [the plan administrator] violated ERISA and its regulations by relying on a reason in court that had not been articulated to the claimant during its internal review.").

plan administrator relied on a different portion of this exclusion in the administrative process). The Committee's denial letters cannot reasonably be interpreted as denying coverage on the basis that the PTD life insurance benefit is governed by the Plan's separate life insurance coverage provisions, which is the specific argument Defendant relies on in this litigation. Thus, not only was the district court not required to defer to Defendant's post hoc interpretation of these newly asserted provisions, but the district court should not even have considered this interpretation in the first place.

Consistent with our precedent, we will consider only the specific basis upon which the Plan administrator relied in its administrative denial of benefits. We note that the PTD life insurance provisions appear on their face to cover claimants who, like Plaintiff, are under the age of sixty-five, provide proof that they were awarded Social Security Disability benefits, and submit their claims for PTD benefits within twelve months after they stop working. In the face of Plaintiff's plausible claim for relief pursuant to these provisions, the Committee asserted that Plaintiff's coverage for PTD life insurance benefits terminated after his retirement based on two Plan provisions regarding healthcare coverage. After reviewing the pertinent provisions, we conclude that the Committee's asserted basis for denying Plaintiff's claim was arbitrary and capricious under the terms of the Plan.

Having so held, we must now consider the question of the appropriate

remedy. The dissent cites to our statement in *Flinders* that remand to the administrator will be appropriate if the administrator "failed to make adequate factual findings or failed to adequately explain the grounds for the decision." 491 F.3d at 1194. However, we conclude that the case before us does not involve inadequate findings or an inadequate explanation of the grounds for the decision; rather, the Plan administrator gave a reason for denying benefits that was simply incorrect under the terms of the Plan, then later tried to come up with a more plausible reason for the denial of benefits. We do not read *Flinders* to mandate that a Plan administrator be given interminable opportunities to search for alternative grounds to deny benefits.

We faced the same type of after-the-fact rationale in our recent case of *Kellogg v. Metropolitan Life Insurance Co.*, 549 F.3d 818 (10th Cir. 2008). In *Kellogg*, the claimant's husband was a participant in an accidental death and dismemberment policy that included an exclusion for losses caused or contributed to by physical illness. The claimant filed a claim for benefits after her husband crashed his car into a tree while having a seizure, then died from injuries sustained in the crash. In litigation, the claims administrator relied both on the physical illness exclusion and on the plan's definition of an "accident" as being "independent of other causes." *Id.* at 828 (internal quotation marks omitted). However, we rejected the administrator's argument that it had raised both grounds for denial below, concluding that the administrator's denial letter "c[ould] not

reasonably be interpreted as denying AD & D coverage on the basis that [the decedent] was not involved in, or injured as a result of, an 'accident.'" *Id.* at 829. Reviewing the ground the claims administrator had relied on in its denial letter, we concluded that the physical illness exclusion was inapplicable because the proximate cause of the loss was the car crash, not the decedent's seizure. We held that the physical illness exclusion applied only to losses caused by an illness, not to losses caused by an accident that resulted from an illness. As for the claims administrator's argument that the crash was not an accident because it was not "independent of other causes," we refused to consider this ground for denial because the claims administrator had not relied on this ground below. We then stated, "Having rejected the sole basis upon which Met-Life grounded its denial of AD & D benefits, we must reverse the judgment of the district court and remand with directions to enter judgment in favor of Kellogg on the administrative record." *Id.* at 833.

We conclude the same remedy is appropriate in this case. As in *Kellogg*, we have rejected the sole basis upon which the administrator grounded its denial of Plaintiff's plausible claim for benefits, and we will not permit the administrator to rely on new grounds for denial in this litigation or in further administrative proceedings.

## CONCLUSION

For the foregoing reasons, we conclude that the district court should have

-14-

entered judgment in favor of Plaintiff on the administrative record rather than remanding for further administrative proceedings. We therefore **REMAND** with directions for the district court to modify its order and enter judgment in favor of Plaintiff. The district court should also consider on remand whether Plaintiff is entitled to attorney fees and prejudgment interest.

10-7100, *Spradley v. Owens-Illinois*

Tymkovich, J., dissenting.

I disagree with the majority because I believe this case should be remanded to the plan administrator.

"When a plan administrator's decision is overturned as arbitrary and capricious, we may either remand the case to the plan administrator for a renewed evaluation of the claimant's case or we may order an award of benefits." *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1194 (10th Cir. 2007). "Which of these two remedies is proper in a given case, however, depends upon the specific flaws in the plan administrator's decision. If the plan administrator failed to make adequate factual findings or failed to adequately explain the grounds for the decision, then the proper remedy is to remand the case for further findings or additional explanation." *Id.* (citations and quotations omitted). "In contrast, a retroactive reinstatement of benefits is proper where, but for the plan administrator's arbitrary and capricious conduct, the claimant would have continued to receive the benefits or where there was no evidence in the record to support a termination or denial of benefits." *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1176 (10th Cir. 2006) (quotation omitted).

Here, it appears to me that at least one of the denial letters referred to a portion of the benefits plan addressing life insurance coverage as well as citing to the provisions addressing health benefits. According to that denial letter, the plan

administrator explained:

> I have been asked to respond to your letter dated December 12, 2008 in which you claim your client, Tommy Spradley, is entitled to a Permanent and Total Disability (PTD) life insurance benefit from the Owens-Illinois Hourly Employees Welfare Benefit Plan. . . . Please note that Mr. Spradley's benefit coverage under the Owens-Illinois, Inc. Hourly Employees Welfare Benefit Plan ended as of the last day of the month (April 30, 2008) in which his employment with Owens-Illinois ended . . . (page 3) . . . Once he retired and terminated his employment with Owens-Illinois, he was no longer eligible to apply for and receive a PTD life insurance benefit . . . .

App. 464. The denial letter went on to explain that had Mr. Spradley applied for and qualified for this benefit at the proper time, he would have been required to elect the mix of benefits offered for disability rather than the mix of benefits offered for early retirement. He would not have been eligible for the "level-income" option that equalizes payments before and after the retiree becomes eligible for social security. App. 465.

Thus, even with the incorrect page references mentioned by the majority, Mr. Spradley and his lawyer had sufficient information to understand the gist of Owen-Illinois's decision to include the life insurance provisions of the benefits package. Since I do not think the record mandates an award of benefits, and the record does not support a finding of bad faith on the part of the plan administrator in denying the benefits, a remand to the plan administrator is the proper course of action.