DONALD M. MIDDLEBROOKS, UNITED STATES DISTRICT JUDGE
THIS CAUSE comes before the Court upon Defendant Aetna Insurance Company's *1315 ("Aetna") Motion to Dismiss (DE 22), filed August 8, 2018. Plaintiffs filed a response on August 31, 2018 (DE 27), and Defendant filed a reply on September 17, 2018 (DE 30). For the reasons set forth below, Defendant's Motion is granted.
I. BACKGROUND
Plaintiffs initiated this lawsuit on June 14, 2018. (DE 1). Plaintiff H.H. filed by and through his father, J.H., and Plaintiff V.G. filed by and through her father, C.G. (Id. at 1). Plaintiffs asserted claims under the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. ¶¶ 1001 - 1191c, and under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Act of 2008 (the "Parity Act"), 29 U.S.C. § 1185a. (Id. )
A. Plaintiff H.H.
Plaintiff H.H. was covered by his father J.H.'s employer-sponsored health insurance plan, which was underwritten and administered by Aetna. (Id. ¶¶ 8, 19). On March 29, 2016, upon the recommendation of his therapist, H.H. went to Open Sky Wilderness Therapy ("Open Sky"), an intermediate mental health treatment program in Durango, Colorado. (Id. ¶¶20-21). H.H. had for years had mental health issues such as anxiety, depression, and suicidal ideation, and he had unsuccessfully undergone outpatient treatment, hospitalization, and other therapies. (Id. ) He was treated at Open Sky from March 29, 2016 to June 29, 2016, and his father paid $45,105 for such treatment. (Id. ¶ 24).
On October 29, 2016, Aetna denied the claims submitted for H.H.'s treatment at Open Sky. (Id. ¶ 25). J.H. appealed Aetna's decision, and Aetna affirmed it on May 20, 2017. (Id. ¶ 26). J.H. invoked Aetna's second level of appeal, and Aetna again affirmed its denial of the claims on August 17, 2017. (Id. ¶ 27). After J.H.'s second appeal was denied, he had exhausted Aetna's mandatory internal appeal process. (Id. )
H.H. brings three claims: first, for plan enforcement under ERISA (Count 1); second, for violating the Parity Act (count 2); and third, for equitable relief under ERISA for Aetna's violation of the Parity Act (Count 3). (Id. ¶¶ 47-65). H.H. initiated this lawsuit in his individual capacity and as representative of a class of people "who are covered under any ERISA-governed health benefit plan fully-insured by Aetna Life that covered mental or nervous disorders or substance abuse care and who required treatment at one or more licensed residential treatment centers during the applicable class period." (Id. ¶ 36). On October 30, 2018, H.H. informed the Court that he no longer sought to proceed with this matter as a class action and is instead only pursuing his claims on an individual basis. (DE 46).
B. Plaintiff V.G.
Plaintiff V.G. was insured under her father C.G.'s employer-sponsored health insurance, which was administered by Aetna. (DE 1 ¶¶ 7, 12). Upon the advice of her therapist, V.G. went to Aspiro Group, Inc. ("Aspiro"), a wilderness therapy program in Mount Pleasant, Utah, on March 6, 2016. (Id. ¶ 12-13). V.G. had already unsuccessfully undergone outpatient treatment and other therapies for her mental health issues such as attention-deficit/hyperactivity disorder ("ADHD"), autism, and suicidal ideation. (Id. ) V.G. was treated at Aspiro from March 6, 2016 to May 4, 2016, for which C.G. paid $28,500. (Id. )
On March 9, 2016, Aetna denied the claims submitted for V.G.'s treatment at Aspiro. (Id. ¶ 18). C.G. appealed Aetna's decision, and Aetna affirmed it on October 22, 2016. (Id. ) C.G. appealed the decision for a second time, and Aetna again affirmed it on January 26, 2017. (Id. ) At that *1316 point, C.G. had exhausted Aetna's required internal appeals procedure.
V.G. brings two claims for plan enforcement under ERISA against Aetna (Count 4-5). (Id. ¶¶ 66-74). V.G. initially brought this action on her own behalf and on behalf of a class of people "who are covered under any ERISA-governed self-insured health benefit plan (1) with similar mental health and substance abuse grants and exclusions to the plan covering V.G. (2) that is administered by Aetna Life and (3) who required treatment at one or more licensed wilderness therapy programs during the applicable class period." (Id. ¶ 36). V.G. notified the Court on October 30, 2018 that she no longer sought to proceed with this matter as a class action and is instead only pursuing her claims on an individual basis. (DE 46).
II. LEGAL STANDARD
A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and must take the factual allegations stated therein as true. Morgan v. Christensen, 582 Fed. Appx. 806, 809 (11th Cir. 2014). According to Rule 8(a), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). This standard requires more than bare allegations or conclusions by the plaintiff. The factual assertions must be sufficient to allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Morgan, 582 Fed. Appx. at 809 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ).
III. DISCUSSION
A. ERISA Violations
"[B]enefits payable under an ERISA plan are limited to the benefits specified in the plan." Sanctuary Surgical Centre, Inc. v. UnitedHealth Group, Inc., 2013 WL 149356, at *3 (S.D. Fla. Jan. 14, 2013). To state a plausible claim under ERISA, then, a plaintiff "must 'provide the court with enough factual information to determine whether the [services] were indeed covered services under the plan.' " Id. (quoting Stewart v. Nat'l Educ. Ass'n, 404 F.Supp.2d 122, 130 (D.D.C. 2005) ). A plaintiff must identify a specific term of the plan that covers the services at issue and must provide facts sufficient to show that the services meet whatever requirements the plan imposes for coverage. See Coles v. Bert Belle/Pete Rozelle NFL Player Ret. Plan, 2014 WL 12617587, at *3 (M.D. Fla. June 18, 2014) (finding that plaintiff did not state a plausible claim because plaintiff did not allege facts sufficient to show that he was entitled to benefits under the identified provision of the plan).
1. H.H.'s Insurance Plan
H.H. alleges that his treatment at Open Sky is covered under a provision of his health insurance plan providing coverage for "Treatment of Mental Disorders and Substance Abuse." (DE 1, Exhibit B at age 62-63).[1] H.H.'s plan states that it covers charges incurred in a residential treatment facility for treatment of mental disorders or substance abuse. (Id. ) The plan includes a detailed list of requirements for a facility to qualify as a residential treatment facility for the plan's purposes, including that the facility must have a licensed behavioral health provider on site twenty-four hours *1317 per day and seven days per week, the facility must perform a comprehensive patient assessment before or upon admission, the patients must be admitted to the facility by a physician, and the facility must have access to necessary medical services twenty-four hours per day and seven days per week. (Id. )
Plaintiff H.H. does not sufficiently allege that Open Sky meets the definitional requirements to be covered as a residential treatment facility under his insurance plan.[2] The Complaint does not, for example, sufficiently allege that Open Sky has a licensed behavioral provider on site at all hours or that it has access to necessary medical services at all hours. Instead, Plaintiffs allege that Open Sky has "a primary physician, licensed to practice medicine, available to establish and maintain the health and medical plan and procedures of the facility." (DE 27 at 9-13 (quoting 12 Colo. Code Regs. 2509-8:7-7.5.43) ). This allegation plainly does not meet the criteria for a residential treatment facility set forth in H.H.'s insurance plan. Plaintiffs merely allege that a medical doctor supervises Open Sky's operations, but they do not allege that such doctor is on site at Open Sky at all hours of the day or even that Open Sky has access to such doctor-or any other "necessary medical services"-at all hours of the day.
Furthermore, rather than alleging that Open Sky patients are admitted to the facility by a physician, Plaintiffs merely allege that H.H. went to Open Sky upon his therapist's recommendation. (Id. at 10). The medical definition of "admit," however, is "to accept (someone) into a hospital, clinic, or other treatment facility as an inpatient." Admit, Merriam-Webster's Medical Dictionary (1st ed. 2016). The Complaint does not allege that any physician, including H.H.'s therapist, accepted him into Open Sky as an inpatient. The Complaint also does not allege that Open Sky completes a comprehensive assessment of patients before or upon admission, or even that Open Sky performed a comprehensive assessment of H.H. before or upon his admission. Instead, it only alleges that "[p]atients at licensed residential treatment center [sic], including H.H., typically receive a psychiatric assessment on intake." (DE 1 ¶ 23). These allegations are insufficient to meet the definition of a residential treatment facility under H.H.'s insurance plan. Accordingly, Defendant's Motion is granted as to Count 1 of the Complaint.
2. V.G.'s Insurance Plan
V.G. alleges that her treatment at Aspiro is covered by her health insurance plan under a provision providing coverage for "Mental Health and Substance Abuse Rehabilitation *1318 Services." (DE 1, Exhibit A at 35-36). V.G.'s plan covers inpatient mental health services at "Mental Health Residential Treatment Services" and inpatient substance abuse services at "Substance Abuse Residential Treatment Services." (Id. ) The plan defines these residential treatment services as "[s]ervices for the evaluation and treatment of the psychological and social functional disturbances that are the result of subacute mental health [or substance abuse] conditions provided by an institution which specializes in the treatment of mental health conditions [or that specializes in the treatment of psychological and social disturbances that are a result of substance abuse]; provides a subacute, structured psychotherapeutic treatment program under the supervision of physicians; provides 24-hour care in which a person lives in an open setting; and is licensed in accordance with the laws of the appropriate legally authorized agency." (Id. at page 82-83).
Plaintiffs do not sufficiently allege that Aspiro qualifies as a residential treatment service because, in the Complaint, Plaintiffs allege that Aspiro is licensed under Utah law as an outdoor youth treatment program, Utah Admin. Code r. 501-8 et seq. , rather than as a residential treatment program, Utah Admin. Code r. 501-19 et seq.[3] (DE 1 ¶ 14). While a residential treatment program is an inpatient service that "provides for or arranges for the provision of specialized treatment, rehabilitation or habilitation services for persons with emotional, psychological, developmental, or behavioral dysfunctions, impairments, or chemical dependencies," an outdoor youth program is "designed to provide rehabilitation services to adjudicated minors." Utah Admin. Code r. 501-19-2 ; Utah Admin. Code r. 501-8-2. Accordingly, Utah holds organizations licensed as residential treatment programs to more stringent requirements than organizations licensed as outdoor youth programs. For example, residential treatment programs are required to have on staff licensed physicians, psychologists, and mental health therapists, all of who have had specific training in mental health, substance abuse, and children and youth. Utah Admin. Code r. 501-19-5. Outdoor youth programs, on the other hand, need only employ a licensed or physician and one "treatment professional," who need not have specific training in mental health or substance abuse. Utah Admin. Code r. 501-8-6. For an outdoor youth program, a licensed family and marriage counselor qualifies as a "treatment professional." Id.
As an outdoor youth program, Aspiro does not meet the criteria to qualify as a residential treatment service under V.G.'s plan. I think that the requirement in V.G.'s plan that a covered residential treatment service be "licensed in accordance with the laws of the appropriate legally authorized agency" requires such service to be licensed as one "specializ[ing] in the treatment of mental health conditions" or "in the treatment of psychological and social disturbances that are a result of substance abuse." It is not enough for a program to have any license from the appropriate authority. So while Aspiro is licensed by the state of Utah, I do not think that its *1319 license as an outdoor youth program is sufficient to qualify Aspiro as a residential treatment service within the meaning of V.G.'s insurance plan. Having failed to show that Aspiro is licensed as a residential treatment service, Plaintiffs have not sufficiently alleged that Aspiro's services were covered by V.G.'s insurance plan. Accordingly, Counts 4 and 5 of Plaintiffs' Complaint are dismissed.
B. H.H.'s Parity Act Claim
"Congress enacted the [Parity Act] to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 356 (2d Cir. 2016). The Parity Act thus requires group health plans that provide medical and surgical benefits as well as mental health or substance abuse disorder benefits to ensure that "the treatment limitations applicable to such mental health or substance abuse disorder benefits are no more restrictive than" the treatment limitations applied to medical or surgical benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).
Treatment limitations under the Parity Act can be quantitative or nonquantitative. 29 C.F.R. § 2590.712(a). Quantitative limitations include, for example, a limitation on the number of outpatient visits that an insurance plan will cover. Id. Nonquantitative limitations include "restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." Id. § 2590.712(c)(4)(ii)(H). The Parity Act's implementing regulations prevent a group health plan from "impos[ing] a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification, unless ... any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative limitation ... are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits." Id. § 2590.712(c)(4)(i).
There are two ways that a plaintiff can allege a Parity Act violation: first, she can make a categorical challenge by alleging that she was denied coverage for mental health or substance abuse services based on an existing limitation, in which case she must identify that limitation and compare it to limitations imposed (or not imposed) on analogous medical or surgical services. See Welp v. Cigna Health & Life Ins. Co., 2017 WL 3263138, at *5-6 (S.D. Fla. July 20, 2017). Second, she can make an as-applied challenge by alleging that the mental health or substance abuse services at issue meet the criteria imposed by her insurance plan and that the insurer imposed some additional criteria to deny coverage of the services at issue. A.Z. by and through E.Z. v. Regence Blueshield, 333 F.Supp.3d 1069, 1078-83 (W.D. Wash. 2018) ; see also Welp, 2017 WL 3263138, at *5 n.8 (suggesting that a plaintiff can make such allegations to state a Parity Act violation). Regardless of whether the challenge is categorical or as-applied, the plaintiff "must properly identify, either in the terms of the plan or the administrative record, the relevant treatment limitation supporting that charge." A.Z., 333 F.Supp.3d at 1081. "[A] claimant cannot mount a facial Parity attack out of thin air-she must properly identify the allegedly violative limitation." Id. ; see also Welp, 2017 WL 3263138, at *5 n.8 ("[A]t the very least, a plaintiff must identify the treatments in the medical/surgical arena that are analogous to the sought-after mental health-substance abuse benefit and *1320 allege that there is a disparity in their limitation criteria." (emphasis in original) ).
Here, Plaintiffs make three attempts to allege a Parity Act violation. All three fail.
First, Plaintiffs argue that Aetna "exclude[ed] all coverage for mental health treatment received at residential treatment center programs," but covered medical or surgical services provided at skilled nursing facilities. (DE 1 ¶ 60). As a categorical challenge, this is plainly incorrect. As described above, H.H.'s insurance plan does provide coverage for inpatient treatment for mental disorders or substance abuse at residential treatment facilities. (DE 1, Exhibit B at 62-63). On the face of the insurance plan, there is simply no blanket exclusion of mental health or substance abuse treatment provided by residential treatment center programs.
This argument also fails on an as-applied basis because Plaintiffs do not sufficiently allege that Aetna has a practice of categorically denying coverage for mental health or substance abuse services at residential treatment centers. Even viewing the Complaint in the light most favorable to Plaintiffs, all that Plaintiffs can be described as alleging is that, under two different insurance plans, Aetna denied coverage for services provided by two separate inpatient residential treatment facilities that provide mental health and substance abuse services. The two insurance plans at issue contain different criteria for assessing whether a residential treatment facility is covered by the plan. The two residential treatment facilities at issue are located in different states and are subject to separate licensing regimes. On their own, these allegations do not suggest a categorical practice of denial, and Plaintiffs do not allege that they amount to such when taken together. Plaintiff's conclusory statement-literally conclusory, as it is in the last section of the Complaint, that which details the counts against Aetna, rather than in the section detailing Plaintiffs' factual allegations-that "Aetna Life's practice of excluding all coverage for mental health treatment received at residential treatment programs violates the Parity Act" is insufficient to state a claim under Rule 8.
Second, Plaintiffs allege that Aetna's requirements for what counts as a residential treatment facility under H.H.'s plan violates the Parity Act because the plan does not impose similar requirements for skilled nursing facilities. But Plaintiffs do not allege a disparity in limitation criteria. Instead, Plaintiffs argue that Aetna's definitional criteria for residential treatment facilities, which Plaintiffs allege are more onerous than Colorado's licensing requirements, are only compliant with the Parity Act if Aetna also requires skilled nursing facilities to meet criteria that go beyond Colorado's licensing requirements. (DE 1 ¶ 60). Plaintiffs do not, however, actually allege whether or not Aetna imposes such criteria on skilled nursing facilities, or even what criteria Aetna requires of skilled nursing facilities. Such allegations are insufficient to support a claim for violation of the Parity Act.
Third, Plaintiffs attempt to allege an as-applied challenge to Aetna's refusal to cover H.H.'s treatment at Open Sky. Plaintiffs allege that "Aetna Life has employed 'processes, strategies, evidentiary standards' and other factors in assessing medically necessary services rendered at residential treatment center programs that are different than the standards it employs in assessing medically necessary services rendered at skilled nursing facilities." (DE 1 ¶ 62). These allegations fail for the same reason as Plaintiffs' first as-applied challenge: they are conclusory and unsupported by anything else in the Complaint. While I am aware that, at this stage of the litigation, Plaintiffs need not have proof of *1321 the specific processes that Aetna allegedly uses to deny coverage to residential treatment facilities, Plaintiffs must still include some factual allegations to lend support to their claim. Plaintiffs have here failed to do so. Accordingly, Counts 2 and 3 are dismissed.
It is hereby ORDERED AND ADJUDGED that
(1) Defendant's Motion to Dismiss (DE 22) is GRANTED. Plaintiff's Complaint is DISMISSED. Because it is not clear that amendment would be futile, the Complaint is dismissed without prejudice. If Plaintiffs wish to file an amended complaint, they must do so on or before December 19, 2018.
(2) The Parties' Joint Motion to Modify Pretrial Scheduling Order (DE 48) is DENIED.
(3) The Pretrial Motions deadline set forth in the Pretrial Scheduling Order (DE 9) is VACATED. The Parties shall file all pretrial motions, including summary judgment motions, Daubert motions, and motions in limine, by January 18, 2019.
DONE AND ORDERED in Chambers in West Palm Beach Florida this 12 day of December, 2018.

Where this Order references page numbers for DE-1, Exhibits A and B, it references the pagination according to CM/ECF.

Plaintiffs assert that Defendant is barred from arguing that Plaintiffs' claims did not meet the definitional requirements for coverage under their insurance plans or that Plaintiffs' Parity Act claims fail because, Plaintiff alleges, Defendant did not raise those arguments during the administrative appeals process. (DE 27 at 6-7) (citing Harlick v. Blue Shield of Cal., 686 F.3d 699, 719-20 (9th Cir. 2012) ; Spradley v. Owens-Illinois Hourly Employees Welfare Benefit Plan, 686 F.3d 1135, 1140-41 (10th Cir. 2012) ). Plaintiffs do not, however, cite to any controlling authority in this Circuit holding that Defendant is barred from raising new arguments in court or that such a rule would apply to Plaintiffs' claims under the Parity Act. See Tippitt v. Reliance Standard Life Ins. Co., 276 Fed. Appx. 912, 915 (11th Cir. 2008) (finding that it is not error for a district court to consider post-hoc explanations for coverage denials). Moreover, at least as to H.H.'s claims, Plaintiff states in the Complaint that Aetna's denial of J.H.'s first appeal was on the basis that "[t]he facility does not provide a level of service consistent with the description of a residential treatment program." (DE 1 ¶ 26). That is precisely the argument raised by Defendant in these pleadings, and it would therefore not be barred even if the Eleventh Circuit had adopted such a rule.

In their response to Defendant's Motion, Plaintiffs assert that Aspiro is regulated by Utah as a residential treatment program. (DE 27 at 14-15). Defendants, however, point to public records showing that the Utah Department of Human Services Office of Licensing lists Aspiro as an outdoor youth treatment service rather than a residential treatment service. (DE 22-2 at 123). "This Court is permitted to take judicial notice of documents made publicly available by a government entity." Henderson v. Sun Pharms. Indus., Ltd., 809 F.Supp.2d 1373 (N.D. Ga. 2011) (citing Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010) ).