**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**April 4, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

JILL L. JENSEN,

      Plaintiff - Appellant,

v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA,

      Defendant - Appellee.

No. 24-4014
(D.C. No. 2:22-CV-00293-DAK)
(D. Utah)

_____

**ORDER AND JUDGMENT***

_____

Before **MORITZ**, **MURPHY**, and **CARSON**, Circuit Judges.

_____

Jill Jensen's husband suffered from chronic pain and anxiety, conditions that

his doctors treated with oxycodone and clonazepam. He died from toxicity of those

drugs in 2019, and Life Insurance Company of North America (LINA) denied

accidental-death benefits based on an exclusion for loss caused by medical treatment

of sickness. Like the district court, we affirm the denial because the policy's

language unambiguously excludes benefits.

_____

    * This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. _See_ Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

**Background**

Before his death, Steven Jensen worked for Codale Electric Supply, Inc., a Delaware entity and multistate employer that established a group employee welfare benefit plan (the Plan) governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. The Plan provides benefits for accidental death and dismemberment (AD&D) through a group accident policy from LINA. The policy's effective date is July 1, 2010, and it includes a choice-of-law provision stating that it is governed by Delaware law. Codale, the Plan administrator, gave LINA "the authority, in its discretion, to interpret the terms of the Plan, including the [p]olic[y]; to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact." App. 87.

Steven suffered from chronic pain for years, which his doctor treated with a prescription for oxycodone. Steven's doctor renewed that prescription six weeks before Steven's death. On January 30, 2019, Steven saw a different doctor for his anxiety and received a prescription for clonazepam. On the morning of February 1, 2019, Jensen found Steven dead in their bedroom. An autopsy determined that Steven died of oxycodone and clonazepam toxicity.[1]

Jensen sought AD&D benefits from LINA, but LINA denied the claim in December 2019, citing the policy's exclusions for losses caused by voluntary

---

[1] As the district court noted and the parties don't dispute, "[t]he potential for death when mixing oxycodone and clonazepam is documented in medical literature." App. 260.

ingestion of drugs and by medical treatment of sickness. Jensen administratively

appealed, and in April 2020, LINA dropped the voluntary-ingestion exclusion but

maintained that the medical-treatment exclusion precluded AD&D benefits.[2]

Jensen then filed this action under 29 U.S.C. § 1132(a)(1)(B), which

authorizes a beneficiary of an ERISA-governed plan to bring a civil action "to

recover benefits due to [them] under the terms of [the] plan."[3] At summary judgment,

the district court entered judgment for LINA, determining under de novo review that

the medical-treatment exclusion unambiguously precluded payment of benefits.[4]

Jensen appeals.

## Analysis

We review the district court's summary-judgment ruling de novo. *LaAsmar*,

605 F.3d at 795–96. And "[l]ike the district court, we must first determine the

---

[2] LINA approved and paid Jensen's life-insurance claim.

[3] Jill's complaint named both LINA and Cigna Health and Life Insurance Company as defendants, but she voluntarily dismissed her claims against Cigna before it was served.

[4] Summary judgment in an ERISA case "is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non[]moving party is not entitled to the usual inferences in its favor." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 795–96 (10th Cir. 2010) (quoting *Bard v. Bos. Shipping Ass'n*, 471 F.3d 229, 235 (1st Cir. 2006)). To be sure, *LaAsmar* describes summary judgment as a vehicle for deciding the case when "the parties in an ERISA case *both* move[] for summary judgment and stipulate[] that no trial is necessary," whereas here, only Jensen moved for summary judgment. *Id.* at 796 (emphasis added). But Jensen has not disputed LINA's position that it did not need to file its own summary-judgment motion. And we have noted in an unpublished but persuasive decision that one party's summary-judgment motion is sufficient to "trigger[] the district court's determination of final judgment in an ERISA case." *Mohammed v. Metro. Life Ins. Co.*, 535 F. App'x 722, 723 (10th Cir. 2013).

appropriate standard to be applied to [LINA's] decision to deny benefits," which is the ultimate object of our review. *Id.* at 796 (quoting *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008)); *see also Ian C. v. UnitedHealthcare Ins. Co.*, 87 F.4th 1207, 1219 (10th Cir. 2023) ("Our review goes to the plan administrator's decision, not the district court's."). We review a benefits denial de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case review is for abuse of discretion.[5] *LaAsmar*, 605 F.3d at 796 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

Here, the Plan includes a discretionary-authority provision, but Jensen argues that it's unenforceable because in 2018, Utah passed a law banning discretionary-authority clauses in insurance contracts. *See* Utah Code Ann. § 31A-21-314(2)(d). LINA responds that Utah law is irrelevant because under applicable federal choice-of-law principles, the policy's choice of Delaware law—which does not ban discretionary-authority clauses—is binding. *See Ellis v. Liberty Life Assurance Co. of Bos.*, 958 F.3d 1271, 1284 (10th Cir. 2020) (outlining ERISA choice-of-law inquiry). The parties also brief various issues related to retroactivity issues with applying a 2018 statute to a 2010 policy, ERISA preemption, and a different Utah law that bans choice-of-law provisions in insurance contracts. But we need not address or decide

---

[5] We sometimes describe the more deferential abuse-of-discretion standard as "arbitrary-and-capricious review"; the two descriptions are interchangeable in the ERISA context. *See Ian C.*, 87 F.4th at 1219.

any of these matters because even if Jensen were to successfully evade application of the discretionary-authority provision, her appeal fails under de novo review.[6]

We thus proceed to the merits of Jensen's appeal—whether LINA's AD&D policy provided benefits for Steven's death—applying de novo review. When interpreting an ERISA plan, we assess "the plan documents as a whole." *Carlile v. Reliance Standard Life Ins. Co.*, 988 F.3d 1217, 1223 (10th Cir. 2021) (quoting *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007)). In so doing, we consider the "common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." *Miller*, 502 F.3d at 1250 (alteration in original) (quoting *Admin. Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 393 F.3d 1119, 1123 (10th Cir. 2004)). We "will apply unambiguous plan provisions as written." *Carlile*, 988 F.3d at 1223. But if a "plan provision is reasonably susceptible to more than one meaning, or [if] there is uncertainty as to the meaning of the term," we will find ambiguity. *Id.* (quoting *Miller*, 502 F.3d at 1250). And ambiguous terms "'must be construed against [the insurer] in accordance with the doctrine of *contra proferentem*,' which 'construes all ambiguities against the drafter.'" *Id.* (quoting *Miller*, 502 F.3d at 1253).

---

[6] The district court took the same approach. And although Jensen faults the district court for doing so, we reject her argument on that front because courts routinely decline to decide the standard of review when they determine that the result will be the same under any standard. *See, e.g.*, *Ian C.*, 87 F.4th at 1218 (declining to decide standard of review because insurer would not prevail even under deferential abuse-of-discretion review).

In reviewing LINA's decision to deny benefits, we are limited to considering only the rationale given by LINA for that denial. *See Spradley v. Owens-Ill. Hourly Emps. Welfare Benefit Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012).[7] Although LINA initially cited two exclusions, it ultimately denied benefits under only the medical-treatment exclusion, which states that "benefits will not be paid for" a covered loss that "is caused by or results from . . . [s]ickness, disease, bodily or mental infirmity, bacterial or viral infection *or medical or surgical treatment thereof*, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food." App. 223 (emphasis added).

Jensen first argues, as she did below, that this exclusion unambiguously does not apply because under the last-antecedent rule, the phrase "medical or surgical treatment thereof" applies only to the last item in the list, "bacterial or viral infection." In support, she emphasizes that the "medical or surgical treatment" phrase is not set off by a preceding comma. The last-antecedent rule is an interpretive

---

[7] Jensen seeks to extend this principle, (1) faulting LINA for not explaining in its denial letters why it disagreed with her proffered reading of the policy and (2) asserting that we should now prohibit LINA from advancing any such explanation on appeal. To be sure, we require ERISA insurers "to provide a claimant with the specific reasons for a claim denial" and engage in "'a full and meaningful dialogue regarding the denial of benefits.'" *Spradley*, 686 F.3d at 1140 (quoting *Glista v. Unum Life Ins. Co.*, 378 F.3d 113, 129 (1st Cir. 2004)). But here, LINA did just that: it told Jensen that it was denying benefits under the medical-treatment exclusion, expressed disagreement with Jensen's proffered interpretation of that exclusion, and continues to assert in litigation that the medical-treatment exclusion precludes benefits. *See id.*; *Ian C.*, 87 F.4th at 1219. This is simply not a situation in which LINA has "sandbagged" Jensen with an "after-the-fact plan interpretation." *Spradley*, 686 F.3d at 1140.

strategy that courts sometimes use for "a list of terms or phrases followed by a limiting clause." *Lockhart v. United States*, 577 U.S. 347, 351 (2016). This "rule provides that 'a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" *Id.* (cleaned up) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)). "The rule reflects the basic intuition that when a modifier appears at the end of a list, it is easier to apply that modifier only to the item directly before it." *Id.*

As LINA does not dispute, a straightforward application of the last-antecedent rule supports Jensen's view that the medical-treatment exclusion does not apply here. Under that view, the exclusion does not apply because Steven's death was caused by medical treatment of sickness, disease, or bodily or mental infirmity and *not* by medical treatment of bacterial or viral infection.

But "as with any canon of statutory interpretation, the rule of the last antecedent 'is not an absolute and can assuredly be overcome by other indicia of meaning.'" *Id.* at 352 (quoting *Barnhart*, 540 U.S. at 26). Those indicia of other meaning typically come from "structural or contextual evidence." *Id.* at 355. Or, stated more simply, "sometimes context weighs against the application of the rule of the last antecedent." *Id.* at 355–56; *see also Payless Shoesource, Inc. v. Travelers Cos.*, 585 F.3d at 1366, 1370–71 (10th Cir. 2009) (explaining that last-antecedent rule is a "presumption based on the grammatical rule against misplaced modifiers"; because "grammatical rules are bent and broken all the time," courts "will not enforce the more grammatical interpretation of a contract 'when evident sense and

7

meaning require a different construction'" (quoting *Link, Inc. v. City of Hays*, 972 P.2d 753, 758 (Kan. 1999))).

We agree with LINA that the context here cuts strongly against Jensen's last-antecedent interpretation. The purpose of AD&D insurance is to provide benefits when death (or another covered loss) results solely from an accident; such insurance does not typically provide benefits for accidents that occur in the course of medical treatment. As one court has explained, AD&D insurance "carve[s] out physical injuries not caused by illness from those that are so caused, and while injuries caused not by the illness itself but by the treatment of the illness could be put in either bin, the normal understanding is that they belong with illness, not with accident." *Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050, 1052–54 (7th Cir. 1991). And the policy at issue here follows this traditional view.

The cover page states that the policy "does not pay benefits for loss caused by sickness." App. 208 (capitalization and formatting standardized). Additionally, the policy defines the term "covered accident" as "[a] sudden, unforeseeable, external event that results, *directly and independently of all other causes*, in a [c]overed [i]njury or [c]overed [l]oss and . . . *is not contributed to by* disease, [s]ickness, [or] mental or bodily infirmity." *Id.* at 218 (emphases added). The terms "covered injury" and "covered loss" are likewise limited to "[a]ny bodily harm that results *directly and independently of all other causes*" and a loss that is "the result, *directly and independently of all other causes*, of a [c]overed [a]ccident," respectively. *Id.* (emphases added). These provisions strongly indicate that AD&D benefits under the

8

policy are only available for losses caused by an accident alone, with no sickness-related contributing causes.

Thus, the context in which the medical-treatment exclusion appears weighs strongly against Jensen's last-antecedent reading. Indeed, the Third Circuit has held as much in a case involving an identical exclusion in a LINA AD&D policy. *See Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 418–20 (3d Cir. 2011). There, like Jensen here, the plaintiff argued that the comma usage in this exclusion "suggests that the term 'medical or surgical treatment thereof' would not be extended to the terms 'sickness, disease, bodily or mental infirmity.'" *Id.* at 419. But the Third Circuit rejected that view as inconsistent with "the indicia of meaning in the [p]olicy," explaining that "[w]here the meaning of the contract language is clear, the last-antecedent rule should not be used to create ambiguity." *Id.*

Moreover, it would make little sense, from a practical perspective, for the policy to exclude benefits for loss caused by medical treatment of bacterial or viral infection but to pay benefits for loss caused by medical treatment of sickness, disease, or bodily or mental infirmity. Jensen offers no explanation for why bacterial or viral infection should be handled differently than other kinds of sickness, disease, or infirmity. *See Lockhart*, 577 U.S. at 355 (listing examples where Court declined to apply last-antecedent rule because context suggested no reason for limiting application of modifying phrase to only the last item in list); *Payless*, 585 F.3d at 1370–71 (rejecting application of last-antecedent rule where it would have excluded coverage for litigation under host of federal laws but retained coverage for litigation

under similar or identical state laws). Because Jensen's last-antecedent reading is "overcome by other indicia of meaning," we reject her argument that the medical-treatment exclusion unambiguously does not apply here. *Lockhart*, 577 U.S. at 352 (quoting *Barnhart*, 540 U.S. at 26).

Alternatively, Jensen argues that the medical-treatment exclusion is ambiguous and must be construed in her favor under *contra proferentem*. At the outset, for the contextual reasons just explained, we do not agree that Jensen's last-antecedent reading is reasonable, such that the exclusion "is reasonably susceptible to more than one meaning" and therefore ambiguous. *Carlile*, 988 F.3d at 1223 (quoting *Miller*, 502 F.3d at 1250); *see also Viera*, 642 F.3d at 419–20 (determining that last-antecedent reading of this policy language "is not reasonable" and does not create ambiguity). But Jensen further argues that the medical-treatment exclusion is nevertheless ambiguous because "there is uncertainty as to [its] meaning" when it is read in conjunction with the voluntary-ingestion exclusion. *Carlile*, 988 F.3d at 1223 (quoting *Miller*, 502 F.3d at 1250).

The voluntary-ingestion exclusion states that no benefits will be paid for any loss that "directly or indirectly, in whole or in part, is caused by or results from . . . voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of a [p]hysician and taken in accordance with the prescribed dosage." App. 223. According to Jensen, if the medical-treatment exclusion precludes benefits for loss caused by taking medication to treat an illness, then the "unless" portion of the voluntary-ingestion exclusion is rendered meaningless. Or, put

differently, Jensen contends that the "unless" clause in the voluntary-ingestion exclusion "clearly contemplate[s] covering accidental deaths resulting from taking medications as prescribed," Rep. Br. 16, and that this clause is inconsistent with the medical-treatment exclusion, which precludes benefits for an accidental death resulting from taking medications as prescribed.

But as LINA explains, the two exclusions are not, in fact, contradictory. The carve-out in the voluntary-ingestion exclusion for taking medications as prescribed is general—it does not specify the purpose for which the medication is taken. That means the "unless" clause within the voluntary-ingestion exclusion is functionally broader than the medical-treatment exclusion, which excludes loss caused by taking medications as prescribed only for the listed maladies: sickness, disease, or bodily or mental infirmity. And in the sliver of daylight created by the voluntary-ingestion exclusion's slightly broader scope, its "unless" clause preserves benefits for loss caused by taking medications as prescribed for *accidental injuries*. This preservation of benefits makes sense in the context of this AD&D policy, which aims to provide benefits for loss caused *by accidents*. So the "unless" clause of the voluntary-ingestion exclusion does not conflict with the policy's exclusion of benefits for loss caused by taking medications prescribed for sickness, illness, or bodily or mental infirmity.

Jensen attempts to resist this reading by suggesting that there is no daylight between the provisions because taking medication as prescribed for an accidental injury would constitute taking medication as prescribed for a bodily infirmity. But

11

the commonly understood definition of "infirmity" relates to states of weakness or disease and does not encompass injuries. *See Infirmity*, Merriam-Webster, https://www.merriam-webster.com/dictionary/infirmity [https://perma.cc/D3TK-FJFL] ("the quality of being feeble" or "disease, malady"); *Infirmity*, Black's Law Dictionary (12th ed. 2024) ("[p]hysical weakness caused by age or disease"). So taking medication prescribed for an accidental injury would not constitute medical treatment of a bodily infirmity (or of sickness or disease), and the medical-treatment exclusion would not apply to preclude benefits.

In sum, and at the risk of repetition, the "unless" clause of the voluntary-ingestion exclusion allows for benefits under the policy when a participant is injured in an accident, is prescribed medication to treat the injury, takes that medication as prescribed, but then dies from doing so. This scenario does not fall within the medical-treatment exclusion because taking medication as prescribed for an accidental injury does not constitute medical treatment of a bodily infirmity (or of sickness or disease). Viewed in this light, there is no conflict between the two exclusions and no ambiguity to interpret in Jensen's favor under *contra proferentem*.[8] And because Steven's death resulted from medical treatment of sickness, the

---

[8] Cases in lower courts have faced similar issues and arguments. *Compare Grobe v. Vantage Credit Union*, 679 F. Supp. 2d 1020, 1031–33 (E.D. Mo. 2010) (explaining consistency between exclusions for medical treatment and ingesting drugs), *with Clark v. Metro. Life Ins. Co.*, 369 F. Supp. 2d 770, 778 (E.D. Va. 2005) (finding medical-treatment and drug-use exclusions in conflict). Because these cases are fact-intensive and rest on the specific policy language at issue—none of which directly tracks the policy language at issue here—we decline to rely on them and instead focus our analysis strictly on the policy language at issue here.

unambiguous medical-treatment exclusion precludes benefits.

## Conclusion

Even assuming de novo review applies, the policy's medical-treatment exclusion unambiguously precludes AD&D benefits for Steven's death. So we affirm the district court's grant of summary judgment for LINA.

As a final matter, we deny LINA's motion asking us to take judicial notice of various information related to Codale's corporate structure because those facts are relevant only to the standard-of-review issue that we do not decide in this appeal.

Entered for the Court

Nancy L. Moritz
Circuit Judge